**Vince LEE, Grievant and Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF HEALTH, Respondent and Appellee.**

No. 15551.

Supreme Court of South Dakota.

Argued April 22, 1987.

Decided July 22, 1987.

Jacqueline M. Rasmussen, of Nelson & Harding, Rapid City, for grievant and appellant.

Mark W. Barnett, of Schmidt, Schroyer, Colwill & Barnett, P.C., Pierre, for respondent and appellee.

SABERS, Justice.

Vince Lee (Lee) appeals the termination of his employment with the South Dakota Department of Health (Department). We affirm.

*Facts*

Lee was hired by Department as a Community Health Nurse III on November 2, 1981. Lee was a career service employee. He was well aware of Department's rules concerning the Family Planning Program at the West River Community Health Clinic (Clinic), some of which he drafted himself. On December 23, 1983, Lee was the supervising nurse on duty at Clinic. He dispensed a three month supply of birth control pills to a fifteen-year-old girl ("Tam-

my"). Lee gave her the pills despite the fact that the necessary records of a physical exam and PAP smear were missing from her file. The rules of Clinic were very clear: "no records, no pills." Nurses are not licensed to dispense medication without a physician's approval.

On March 22, 1984, Department terminated Lee's employment for the improper dispensing of birth control pills to a minor. Lee's termination was subsequently approved by Department's Division of Health Services and the South Dakota Career Service Commission (Commission). All administrative reviews found cause for Lee's dismissal and no lack of due process. The circuit court entered Findings, Conclusions, and Orders on September 3, 1986, which affirmed the Commission's decision.

*Lee's Claims*

Lee appeals his termination claiming that Department's decision to discharge him was clearly erroneous, and that he was denied due process, equal protection, and sufficient notice under the administrative rules and regulations.

## 1. DEPARTMENT'S DECISION WAS NOT CLEARLY ERRONEOUS

■ This court makes the same review of the administrative agency's decision as does the circuit court, unaided by any presumption that the circuit court's decision was correct. We do not substitute our judgment for that of the agency as to the weight of evidence on questions of fact unless the agency's decision is clearly erroneous, or arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. SDCL 1–26–37; *Anderson v. Western Dakota Insurors*, 393 N.W.2d 87 (S.D.1986); *Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415–416 (1986); *Raml v. Jenkins Methodist Home*, 381 N.W.2d 241, 242–243 (S.D.1986); *State Div. of Human Rights v. Miller*, 349 N.W.2d 42, 46 n. 2 (S.D.1984).

Lee contends that his decision to give Tammy the pills was a "judgment call" and grounds for a reprimand only rather than

termination. The record shows that Tammy was not a responsible patient. Her history included an unwanted pregnancy, an abortion several months before the incident in question, failure to keep appointments, and failure to obtain the physical examination knowing full well that it was needed to obtain more pills. Lee did not thoroughly review her chart. He attempted to but did not contact a physician before giving Tammy the pills. He requested another nurse to make sure Tammy came in after the holidays for the missing work. However, Tammy did not come in and Lee never followed up on this. The evidence shows that Lee did not consult a physician before making this decision even though he believed the instructions on Tammy's chart were ambiguous. If at all unsure about the missing records, Lee could have given Tammy a small amount of "covering" pills (up to one month) to hold her over until she could come in for the physical. The Family Planning Manual used by all Clinic staff provided that no more than one month of extra pills could be given to tide a patient over to an examination. Even these covering pills required a doctor's approval. Despite this, Lee gave Tammy a three month supply.

When initially confronted with the incident, Lee insisted that it was merely a "paper foul-up" and no big deal. According to Department employees, however, the dangers to Tammy were manifold. She had recently undergone an abortion. She was a smoker. When she finally had the physical examination in March of 1984 her urinalysis showed a 2+ protein count. At that time, there was no way for her doctor to determine whether she had been "spilling protein" since December 1983 when Lee gave her the pills. Lee did not recognize or appreciate the potential health hazard associated with his dispensing three months of pills to Tammy without the results of the physical.

■ Although Lee claims that other minor incidents and "coffee room" gossip played a substantial part in his dismissal, these allegations are not supported by the record. The evidence supports the circuit

court's affirmance of Department's decision to terminate Lee. The findings of fact were not clearly erroneous and the conclusions of law were correct. SDCL 1-26-36.

## 2. EQUAL PROTECTION—SEX DISCRIMINATION

Lee claims that he was the victim of sex discrimination and that his female superiors used this incident as a convenient way to get rid of him. He claims that they resented his "take charge" attitude. He further claims that the other nurse implicated in this matter, a female, was only reprimanded and not discharged, which shows that he received unequal treatment.

■ Lee had the burden of showing that he was discharged for being male, rather than for rule violations or any other misconduct. *Cedeck v. Hamiltonian Federal Sav. & Loan Ass'n*, 414 F.Supp. 495 (E.D. Mo.1976). He never denied the wrongdoing. Nor did he deny the fact that dispensing the pills to a minor without the required records or a physician's approval was prohibited. The record shows that the nurse who discovered the discrepancy in Tammy's chart and brought it to the attention of Lee's supervisor was a new employee who had no conflict with Lee.

■ It is true that the other nurse involved in the disposition of Tammy's case was a female and was not discharged. However, she was subordinate to Lee and followed his orders. She also reacted differently to the criticism by apologizing and assuring her supervisor that it would never happen again. The Clinic's Health Services Administrator testified that Lee was treated differently because he was a supervisor and was expected to handle the situation in accordance with the rules. Lee agreed that there was no discrimination by his female supervisors when he was hired and at the time he was offered a possible promotion. Therefore, Lee's equal protection argument fails because the evidence fails to show that his termination was the result of sex discrimination.

## 3. TERMINATION FOR RULE VIOLATIONS

Lee was terminated "for cause," i.e., dispensing pharmaceuticals without a license. Department cited violations of ARSD 55:01:12:05(5) and (11). These sections deal with rule violations and inducing another to violate rules. They allow dismissal for cause at any time. ARSD 55:01:12:04, *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982).

■ Lee complains that he was denied thirty days to improve his job performance under ARSD 55:01:12:03:01. However, a termination for cause does not require a thirty day improvement period. Furthermore, the record shows that Department dismissed ARSD 55:01:12:05(8) (incompetence) as one of its reasons for dismissing Lee upon finding that the thirty day improvement period had not been followed. The fact remains that Lee was dismissed for cause under subsections (5) or (11), not for incompetence under subsection (8).

## 4. DUE PROCESS—PRETERMINATION HEARING

Lee claims that the manner in which he was summarily discharged failed to comply with his right to a pretermination hearing under *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and thus constituted a violation of due process. He contends that he was given no prior notice of the brief meeting with his supervisors which resulted in his termination. Lee claims that the Department made no prior investigation of the facts surrounding the handling of Tammy's file and that he was denied the opportunity to adequately respond to the charges against him. Lee further claims that the unequivocal decision to fire him was made *before* the meeting took place, as evidenced by the letter of termination he received during the meeting after he refused to resign.

■ *Loudermill* requires a pretermination hearing before a public employee can be discharged. For due process purposes, *Loudermill* held that "some type of hear-

ing" is ordinarily a constitutional requirement before a public employee may be discharged from a job in which he has a protected property interest. 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 504. The Constitution does not create property interests. "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972); *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491, 84 L.Ed.2d at 501. Just as the *Loudermill* civil service employees' "property interest" was created by statute, Lee's "property interest" in his job as a community health nurse was created and defined by Department's rules and regulations. Under *Loudermill*, a career service employee such as Lee possesses property rights in continued employment. *Id.*, 470 U.S. at 539, 105 S.Ct. at 1491–1492, 84 L.Ed.2d at 501.

The *Loudermill* Court stated that the hearing need not be elaborate.

> [T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. (citation omitted)

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. (citation omitted) The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. (citations omitted)

*Id.*, 470 U.S. at 545–546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. Lee argues that this means an opportunity to be heard in a meaningful manner at a meaningful time.

■ Lee was terminated on March 22, 1984. *Loudermill* was decided on March 19, 1985. Department followed its existing procedure in terminating Lee which procedure did not require a pretermination hearing in conformance with the dictates of *Loudermill*. Lee was also afforded the full scope of post-termination protection. In light of these facts, the guidelines for nonretroactive application of a decision under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and the fact that the Supreme Court did not say *Loudermill* was retroactive, we will not apply the *Loudermill* ruling to the present case. However, *Loudermill* shall be applied prospectively to all future public employee termination cases. *See Great Northern R. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

We note that the trial court held that Lee's due process rights were not violated and that the Department complied with *Loudermill* in terminating Lee. We express no opinion whether this termination complied with the *Loudermill* requirements for a pretermination hearing. This part of our decision is based on the nonretroactive application of the *Loudermill* decision. Affirmed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

A Memorandum Opinion Affirming Employment Termination Of Vince Lee is on file and contains the following conclusion: "The State had reasonable and just cause to fire Lee and their decision is not clearly erroneous." The word "decision" is generic. A decision consists of findings of fact and conclusions of law. The trial court entered FINDINGS, CONCLUSIONS, and ORDERS consisting of three pages. Circuit Judge Tice entered his own Findings of Fact, Conclusions of Law, and "Orders."

Judge Tice incorporated the said Memorandum Decision. Was Judge Tice's Conclusion a Finding of Fact or a Conclusion of Law? In my opinion it was a Conclusion of Law. Rationale was brought to bear and legal principles were used in arriving at this Conclusion. Therefore, Judge Tice's scope of review that "their decision is not clearly erroneous" has a conceptually faulty basis.

Complicating my vote further, I concur in the result of this opinion only because of the standard of review set forth by the author on the administrative agency's decision. Reference is made to the following authorities on scope of review: *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948); *Pullman-Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 79 (1982); *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606, 616 n. 15 (1982). These are cited even though they did not involve appeals from administrative agencies.

Lastly, I would refer to my rather exhaustive special concurrence in *Guardianship of Viereck*, 411 N.W.2d 102, 107 (S.D. 1987). I will not set forth all of the authorities included in that writing, but will adopt its conceptual platform by reference to avoid duplication.