James D. HANSON, Employee,
Claimant and Appellee,

v.

**PENROD CONSTRUCTION COMPANY,**
Employer and Appellant,

and

Iowa Mutual Insurance
Company, Insurer.

No. 15905.

Supreme Court of South Dakota.

Argued Feb. 16, 1988.

Decided June 22, 1988.

William A. Bowen of Rice & Bowen, Aberdeen, for employee, claimant and appellee.

Acie W. Matthews of Pruitt, Matthews & Muilenburg, Sioux Falls, for employer and appellant.

MORGAN, Justice.

Employer, Penrod Construction Company (Company) appeals from an order of the circuit court which affirmed an order and award entered against Company and Iowa Mutual Insurance Company (Insurer) by the South Dakota Department of Labor, Division of Labor and Management (Department). We affirm in part, reverse and remand in part.

James D. Hanson (Hanson or claimant) was working as a superintendent/construc-

tion worker for Company on August 24, 1978. While exiting from a Bobcat loader Hanson slipped, but landed in an upright position. Hanson did not feel any immediate severe pain at this time and returned to work in the loader. Later that day claimant had to be helped from the loader and experienced severe pain in his lower back and down into his legs. Hanson had experienced no numbness or pain in his lower back or legs prior to this injury. Hanson eventually sought the services of Dr. Nice, an orthopedic surgeon, who performed diagnostic tests, including a myelogram, which showed a complete blockage of the disc space (herniated disc). Dr. Nice performed a laminectomy (surgical procedure for removal of a portion of vertebra). Hanson claimed, and Department found, that the injury or subsequent medical procedures left Hanson with substantial neurological deficits, diagnosed as cauda equina syndrome. Cauda equina syndrome consists of impaired muscle or motor function in both legs, widespread loss of sensation extending from the buttocks down to the feet, and both bowel and bladder sphincter impairment. 2 Lawyers Medical Cyclopedia § 16.96 (1979). Hanson has, in fact, lost significant control of his bowel and bladder functions.

Department awarded claimant total disability benefits based on its findings and conclusions that claimant's cauda equina syndrome was proximately caused by the work-related injury and that claimant was totally disabled under the odd-lot doctrine. Department further concluded that Company was obligated to pay medical expenses related to chiropractic treatments and a nuclear magnetic resonance test. Department's decision was upheld by the circuit court on appeal. Company argues that claimant is not totally disabled under a strict interpretation of SDCL 62-4-6(23), that the cauda equina syndrome was the result of an independent intervening act, and that the medical expenses complained of were not necessary or suitable and proper medical services.[1]

In appeals from decisions of administrative agencies, this court makes the same review of the agency's decision as did the circuit court. *Lee v. Dept. of Health,* 411 N.W.2d 108 (S.D.1987); *Barkdull v. Homestake Mining Co.,* 411 N.W.2d 408 (S.D. 1987) (Barkdull II). " 'When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable. (Citations omitted.) When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous.' " *Permann v. Dept. of Labor, Unemployment Insurance Division,* 411 N.W.2d 113, 116 (S.D. 1987). We review the factual findings in light of the entire evidence in the record. *Permann, supra; Lee, supra.*

Company first claims that Hanson is not entitled to permanent total disability benefits because his disability is not included within the definitional provisions of SDCL 62-4-6(23), categorizes total disability losses which are compensated at a specific rate for life. SDCL 62-4-7 and SDCL 62-4-3. This issue raises two questions. The first, a question of fact, is the extent of claimant's disability, which is arrived at through expert opinion. The second, a question of law, is whether the odd-lot doctrine is consistent with SDCL 62-4-6(23), allowing compensation for life per SDCL 62-4-7.

On the issue of extent of disability, Company first claims that Hanson was not totally disabled, but that this 47-year-old man could be retrained in the field of electrical repairs so that he could open and operate a repair shop. Expert testimony was received from four doctors; three physicians and a vocational rehabilitation expert. Claimant's doctor testified Hanson had a 60% permanent partial physical impairment, but that for working purposes claimant was 100% disabled. The other two doctors rated claimant at a 30% perma-

---

**1.** Company's final issue addresses the question of whether it should receive credit for payments made to claimant during the pendency of this appeal pursuant to a stipulation entered into between the parties. This issue was not addressed below although the trial court invited Company to bring the issue on. We find nothing in the record to indicate that it did so. Thus, we consider the issue waived.

nent partial physical impairment. Company's expert was the only doctor who testified that claimant was not permanently disabled from working. Dr. Tucker, Hanson's vocational expert, testified that absent retraining claimant was totally disabled for work purposes because he would be unable to secure anything other than sporadic employment resulting in insubstantial income.

The testimony revealed that claimant could work continuously for only 1.5 to 2 hours without a rest and that claimant was very uncomfortable around people because of a constant fear of soiling himself. There was also testimony received that claimant conferred with Company's expert, Vocational Rehabilitation Management, Inc., several times over a two to three-year period. These experts were unable to suggest any job which claimant could perform to make a living.

■ Company contends that the cauda equina syndrome was the result of a preexisting condition and therefore should not be relied upon as a basis for a permanent disability rating. The basis of this argument is that claimant had some symptoms of the syndrome prior to the laminectomy surgery. However, Company is unable to establish that any cauda equina symptoms were present prior to the August 24, 1978, injury. All of the medical evidence, including that of Company's own expert, supports Department's finding that the cauda equina syndrome and neurological deficits were proximately caused by and are actually related to the 1978 injury.

Finally, Company seems to argue that the surgery, not the injury, was the cause of the cauda equina syndrome. That there must be a causal connection between the disability sustained and the accident is undisputed. In discussing the causal connection, this court has said that the causation requirement expresses a factor of source or contribution rather than cause in the sense of being proximate or direct. *King v. Johnson Bros. Construction Co.*, 83 S.D. 69, 155 N.W.2d 183 (1967).

The question is whether the aggravation flowed from the original injury or whether it was caused by an unrelated incident. Here, the aggravation flowed from the surgery which was necessitated by the injury and not from an unrelated incident. Company has not shown that the sustained disability was the result of an independent intervening cause. Furthermore, it is now uniformly held that aggravation of the primary injury by medical or surgical treatment is compensable. 1 Larson's Workmen's Compensation Law § 13.21 (1984).

The trier of fact is free to accept all of, part of, or none of, an expert's opinion. *Wright v. Coca Cola Bottling Co. of Central South Dakota, Inc.*, 414 N.W.2d 608 (S.D.1987); *Erickson v. Minnesota Gas Company*, 358 N.W.2d 526 (S.D.1984); *Schaub v. Job*, 335 N.W.2d 568 (S.D.1983); *Kamp Dakota, Inc. v. Salem Lumber Co., Inc.*, 89 S.D. 696, 237 N.W.2d 180 (1975). Therefore, Department was not clearly erroneous in finding that claimant's cauda equina syndrome and neurological deficits were proximately caused by the 1978 injury.

Company next argues that Department's application of the odd-lot doctrine to Hanson's disability is in conflict with the statutory provision for permanent total disability, SDCL 62–4–7.[2]

This court adopted the odd-lot doctrine in *Barkdull v. Homestake Mining Co.*, 317 N.W.2d 417 (S.D.1982) (Barkdull I). Citing a Minnesota Supreme Court case, we gave meaning to the term "total disability," as follows:

> "[A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income." (Brackets in original.)

*Barkdull I*, at 418, *citing Schulte v. C.H. Peterson Construction Co.*, 278 Minn. 79,

---

**2.** SDCL 62–4–7 provides:

In case of total disability as defined in subdivision (23) of § 62–4–6, compensation shall be paid at the rate provided by § 62–4–3 for life.

153 N.W.2d 130, 133–34 (1967). In adopting the odd-lot doctrine, this court relied on *Schulte*, which construed a statute that is, in all material respects, identical to South Dakota's statutory definition of total disability.

■ Company would first distinguish *Barkdull I* on the grounds that it involved only temporary total disability. Company further argues that the doctrine is antithetical to the statutory definition of permanent total disability as found in SDCL 62–4–6(23). We disagree. First of all, in *Barkdull I* we relied on *Schulte*, supra, which did involve permanent total disability, and, discerning no cogent reason to restrict our application to only temporary total disability, we hold that the odd-lot doctrine applies equally to permanent total disability cases. With respect to the purported statutory impasse, we would point out that the statutory provision is not all inclusive. SDCL 62–4–6(23) provides:

> The loss of both hands or both arms, or both feet, or both legs, or both eyes or of any two thereof, or complete and permanent paralysis, or total and permanent loss of mental faculties, or any other injury which totally incapacitates the employee from working at any occupation which brings him an income, shall constitute total disability, to be compensated according to the compensation fixed by § 62–4–7. *These specific cases of total and permanent disability shall not be construed as excluding other cases of total or permanent disability[.]* (Emphasis added.)

We affirm Department's application of the odd-lot doctrine to the facts of this case.

■ Company next argues that it should not be responsible for the expenses of certain medical services received by claimant; specifically, a nuclear magnetic resonance test and chiropractic treatments. Under SDCL 62–7–10, a claimant must give notice to the employer of injury before he will be entitled to receive physician fees or compensation. Thereafter, pursuant to SDCL 62–4–1, employer must provide all necessary or suitable and proper medical care during the disability or treatment. SDCL 62–4–1 provides, in pertinent part:

> The employer shall provide *necessary* first aid, medical, surgical, and hospital services, *or* other *suitable and proper* care.... The employee may elect to secure his own physician, surgeon, or hospital services at his own expense. (Emphasis added.)

Once notice has been provided and a physician selected or, as in the present case, acquiesced to, the employer has no authority to approve or disapprove the treatment rendered. It is in the doctor's province to determine what is necessary, or suitable and proper. When a disagreement arises as to the treatment rendered, or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.

■ Dr. Nice determined that the nuclear magnetic resonance test was necessary to determine if there had been soft tissue injuries. Company's expert testified that the test was not inappropriate, but that he may have opted for other tests first. As to the nuclear magnetic resonance test and under the evidence in the record, Department's decision is not clearly erroneous or affected by error of law.

■ Dr. Nice, however, did not recommend chiropractic treatments, but testified that as long as the treatments gave claimant relief, they were appropriate. Department's conclusion that chiropractic services incurred at Aberdeen Chiropractic Offices were necessary is unsupported by any finding that such treatment was necessary or proper and suitable.

We affirm except as to the expenses for chiropractic treatment; as to those, we reverse.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur with the entirety of the majority opinion with the exception of a single as-

pect, reversal of Plaintiff's award for chiropractic treatment. Numerous references to the legitimacy of the science of chiropractic as a "healing art" appear in *Nelson v. Palmquist,* 363 N.W.2d 570 (S.D.1985). *See also* SDCL 36–5–1 (defining "Chiropractic" as "the science of locating and removing the cause of any abnormal transmission of nerve energy including diagnostic and externally applied mechanical measures incident thereto."); SDCL 36–5–2 (making practice of chiropractic without a license a misdemeanor, and recognizing a board of chiropractic examiners); SDCL 36–5–8 (educational requirements for chiropractors); and SDCL 36–5–12 (scope of examination of prospective chiropractors). Clearly, the fact that the treatments at issue were chiropractic in nature does not disqualify them from consideration under SDCL 62–4–1, which requires employers to provide "necessary ... or other suitable and proper care" to employees.

Dr. Nice's testimony, as the majority opinion characterizes it, was that Plaintiff's chiropractic treatments were "appropriate." Yet, the majority goes on to find that the Department's finding was "unsupported by any finding that such treatment was necessary or proper and suitable." Merriam–Webster Dictionary 50 (1974) establishes that "appropriate" means "suitable" and is a synonym for "proper." If SDCL 62–4–1 requires that treatment be "suitable and proper," "appropriate" treatment surely qualifies. Beyond this, the majority also ignores Dr. Nice's testimony that chiropractic loosens up back muscles making patients more comfortable, and that Plaintiff in fact did feel relief from his pain through such treatments. Dr. Nice also indicated that chiropractic treatments can provide more symptomatic relief than his own methods. Are we to accept that relief from pain is unnecessary, or improper and unsuitable? The Department's memorandum decision of November 21, 1986, refers to Dr. Nice's testimony to the effect that Plaintiff's chiropractic treatment relieved him of pain, and its Finding of Fact No. XVIII, dated January 28, 1987, reflected that "[w]hen the Claimant experienced reoccuring [sic] lower back pain, he obtained chiropractic treatment which relieved this pain at a cost of $254.00." The evidence supported the finding of fact, which in turn supported the Department's Conclusion of Law No. VIII that the employer was obligated to pay for the "necessary" chiropractic treatments. The Department and trial court were correct in awarding Plaintiff the cost of these treatments, and should have been affirmed. We, who serve on this Court, should not render an interpretation of a statute which would cause the statute to be ineffective or meaningless. *City of Sioux Falls v. State Bd. of Equalization,* 87 S.D. 106, 109, 203 N.W.2d 419, 421 (1973). Quite to the contrary, in the appellate process, we on this Court should liberally construe the provisions of the workmen's compensation law in this state. *Keil v. Nelson,* 355 N.W.2d 525 (S.D.1984); *South Dakota Medical Serv. v. Minnesota Mut. Fire & Cas. Co.,* 303 N.W.2d 358 (S.D.1981). Here, we typically see a blue collar worker depending upon a chiropractor to obtain relief from pain. His physician, Dr. Nice, who treated him from the beginning, testified that these chiropractic services were "appropriate."