907 F.2d 357
 Joseph ZINKER, as Executor of the Estate of Nancy Zinker,
Deceased, Plaintiff-Appellee, Cross-Appellant,
v.
J. Paul DOTY, Director of Operations and Contract
Administration for the Department of Income Maintenance of
the State of Connecticut, individually and in his official
capacity; Judith A. Kemp, Agency Personnel Administrator,
individually and in her official capacity; Stephen B.
Heintz, Commissioner, Department of Income Maintenance of
the State of Connecticut, in his official capacity; and
Elisha Freedman, Commissioner of the Department of
Administrative Services of the State of Connecticut, Defendants,
J. Paul Doty and Judith A. Kemp, Defendants-Appellants,
Cross-Appellees.
 Nos. 1252, 1253, Dockets 89-9122, 89-9124.
 United States Court of Appeals,
Second Circuit.
 Argued April 23, 1990.
Decided June 29, 1990.
 
 Kathleen Eldergill, Manchester, Conn. (Beck & Eldergill, Manchester, Connecticut, of counsel), for plaintiff-appellee, cross-appellant.
 Hugh Barber, Asst. Atty. Gen., Hartford, Conn. (Clarine Nardi Riddle, Atty. Gen., Richard J. Lynch, Asst. Atty. Gen., Hartford, Conn., of counsel), for defendant-appellant, cross-appellee J. Paul Doty, individually.
 Robert A. Nagy, Asst. Atty. Gen., Hartford, Conn. (Clarine Nardi Riddle, Atty. Gen., Hartford, Conn., of counsel), for defendant-appellant, cross-appellee Judith A. Kemp, individually.
 Before VAN GRAAFEILAND, NEWMAN and KEARSE, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 J. Paul Doty and Judith A. Kemp appeal from an amended judgment of the United States District Court for the District of Connecticut which followed a jury trial before Judge Cabranes. The original judgment awarded Nancy Zinker $675,000 in compensatory damages against Doty and Kemp individually and $50,000 in punitive damages against each of them. The amended judgment, entered in response to the defendants' motion for judgment n.o.v., eliminated the punitive damage awards. Zinker cross-appealed from the district court's order eliminating the punitive damage awards.[1] We reverse the amended judgment on the ground of qualified immunity and remand to the district court with instructions to dismiss the fourth amended complaint.
 
 
 2
 In 1984, Zinker was a civil service employee of Connecticut's Department of Income Maintenance. Doty was her immediate supervisor, and Kemp was a personnel officer in the Department. The Department had a program pursuant to which employees could earn extra vacation time by working authorized overtime hours. During June of 1984, Doty had several conferences with Zinker, in the course of which he expressed his belief that she was falsifying her work records in order to qualify for unwarranted time off. When Zinker was unable to demonstrate that Doty was mistaken, he told her that he would recommend that strong disciplinary action be taken.
 
 
 3
 On July 6, 1984, Zinker met with both Doty and Kemp. Although the parties disagree as to what was said at that meeting, it culminated in the following letter addressed to Zinker and signed by Stephen Heintz, Commissioner of the Department of Income Maintenance:
 
 
 4
 Pursuant to Section 5-240(c) of the Connecticut General Statutes, you are hereby dismissed from State service effective the close of business, Friday, July 20, 1984. However, you should not report for work during the two-week notice period. The Department of Income Maintenance is compelled to take this action for the good of the service as a result of your misconduct as a manager in our Data Processing Unit.
 
 
 5
 Specifically, you have willfully violated Agency policy regarding prior approval and use of accrued time. You have perpetrated deliberate and serious misrepresentations on your official time sheets, resulting in payment for time not earned and/or not accrued as authorized compensatory time. When given an opportunity by your supervisor to correct the official records, you further exacerbated the situation by presenting documentation which appears to have been fabricated in your attempt to substantiate such use of alleged earned compensatory time. This documentation cannot be verified by any of the Department's checks and balances, nor is it consistent with any of the explanations offered by you to your supervisor.
 
 
 6
 The Department of Income Maintenance expects its managerial staff to withstand the most stringent scrutiny during the course of their employment with us. Your gross deviation from acceptable conduct in an area of particular sensitivity has significantly impaired our ability to entrust to you Agency managerial functions and responsibility.
 
 
 7
 You have the right to appeal this decision by filing a grievance directly to the Commissioner of Administrative Services within twenty-one (21) calendar days of the effective date of the dismissal.
 
 
 8
 It is with deep regret that we terminate your services with the Department.
 
 
 9
 Section 5-240(c), referred to in the foregoing letter, reads in pertinent part as follows:
 
 
 10
 An appointing authority may dismiss any employee in the classified service when he considers the good of the service will be served thereby. A permanent employee shall be given written notice of such dismissal at least two weeks in advance of his dismissal, except as hereinafter provided, and a copy of the same shall be filed with the commissioner of administrative services. Such notice shall set forth the reasons for dismissal in sufficient detail to indicate whether the employee was discharged for misconduct, incompetency or other reasons relating to the effective performance of his duties and shall be prepared in such form and given in such manner as the commissioner prescribes.
 
 
 11
 The Connecticut statutes also provide that a dismissed employee such as Zinker may appeal her dismissal directly to the "third level of preliminary review", i.e., the "commissioner of administrative services or his designated representative." Conn.Gen.Stat.Ann. Sec. 5-202(a) and (i). Following the July 6, 1984 meeting, Zinker promptly retained an attorney and appealed her dismissal in accordance with this statutory provision. The appeal was heard by Theodore Sulla, an experienced labor relations officer, acting as the commissioner's designee. Following a hearing at which the parties were represented by counsel and testimony was taken from witnesses on both sides, Sulla held that "the action taken by the agency was for reasonable cause" and dismissed the appeal.
 
 
 12
 Although Zinker was authorized by section 5-202(a) to appeal this adverse decision to the employees' review board, a seven member panel organized pursuant to section 5-201, and to have an adverse decision by that board reviewed in the Connecticut courts, see section 4-183, she failed to pursue these remedies. Instead, on April 22, 1985, she instituted the instant action, asserting, among other things, a violation of her constitutional right to procedural due process.[2] Adopting Zinker's argument concerning the requirements of due process, the district court charged the jury that if Zinker "was not provided oral or written notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story prior to her discharge," her employment was terminated without due process of law. In so charging, the district court rejected the defendants' affirmative defense of qualified immunity, which was based upon their contention that the requirements of due process applicable to the termination of a state employment were not clearly established in July of 1984. We hold that the defendants' motions for summary judgment that were based on their claims of qualified immunity should have been granted.
 
 DISCUSSION
 
 13
 In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court discussed the competing societal interests that led to the adoption of the doctrine of qualified immunity. Id. at 813-15, 102 S.Ct. at 2735-37. The Court concluded that, if public officials are not to be dissuaded from the "unflinching discharge of their duties," they must be shielded from liability in performing their discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Id. at 814, 818-19, 102 S.Ct. at 2736, 2738-39. Because the test of reasonableness thus prescribed is an objective one, the Court held further that, in most cases, the defense of qualified immunity properly lends itself to summary disposition. Id. at 818, 102 S.Ct. at 2738. In subsequent decisions, the Court enlarged upon and refined the rule thus expressed. See, e.g., Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law"); Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").
 
 
 14
 The Second Circuit has followed the teachings of the above cases and consistently has recognized the defense of qualified immunity where officials operate in an area in which the law has not been charted clearly. See, e.g., Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir.1988); Giacalone v. Abrams, 850 F.2d 79, 85-88 (2d Cir.1988); Krause v. Penny, 837 F.2d 595 (2d Cir.1988); Security and Law Enforcement Employees v. Carey, 737 F.2d 187, 211 (2d Cir.1984); O'Hagan v. Soto, 725 F.2d 878, 879 (2d Cir.1984).
 
 
 15
 Prior to defendants' complained of actions, the Connecticut Supreme Court of Errors had held that "[w]hen the procedure for the removal of an officer is defined by statute, it is exclusive." McNamara v. City of New Britain, 137 Conn. 616, 619, 79 A.2d 819 (1951); see also Gilbert v. Civil Service Commission, 158 Conn. 578, 581-82, 265 A.2d 67 (1969). In accordance with these holdings, the defendants patterned their procedures on the provisions of sections 5-240 and 5-202 of Connecticut's General Statutes. Cf. Hannifan v. Sachs, 150 Conn. 162, 166-68, 187 A.2d 253 (1962) (decided under former section 5-60 of Connecticut's General Statutes, the predecessor to present section 5-202). Moreover, the constitutionality of former section 5-60 already had been upheld by this court. In Sessions v. State of Connecticut, 293 F.Supp. 834, 839 (D.Conn.), aff'd on opinion below, 404 F.2d 342 (2d Cir.1968), Judge Clarie wrote:
 
 
 16
 Thus, Connecticut law provides both a fair hearing before the discharge becomes final, and a judicial remedy to assure that this hearing is conducted legally. In view of this, it cannot be said as a matter of law that the petitioner was deprived of any constitutional rights by his discharge from state government employment pursuant to the statutes then in effect.
 
 
 17
 In Turrill v. Erskine, 134 Conn. 16, 21, 54 A.2d 494 (1947), a decision that may be viewed as a forerunner to Justice Rehnquist's opinion in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Connecticut Supreme Court of Errors wrote:
 
 
 18
 The state, in adopting the merit system law, in effect voluntarily established conditions governing, among other things, the suspension or discharge of its employees, with the purpose of protecting them against unjustified suspension or dismissal. The extent to which such protection should be afforded rested entirely in the discretion of the General Assembly.... The merit system statute in effect writes into the contract of each employee the conditions which it embodies. All that is required is that the statute should establish those conditions with reasonable certainty.
 
 
 19
 Thereafter, in Arnett v. Kennedy, supra, 416 U.S. at 152-55, 94 S.Ct. at 1643-45, Justice Rehnquist, with the concurrence of Chief Justice Burger and Justice Stewart, held that, in the field of governmental employer-employee relationships, the constitutionally required procedures for terminating an employment constituting a property right are those specified in the statutes that created the right; in other words, the employee must take the "bitter with the sweet." Justice Powell, writing for himself and Justice Blackmun, concurred in Justice Rehnquist's holding that a prior evidentiary hearing was not required. Although he disagreed with Justice Rehnquist's reasoning, he held nonetheless that the Government's interest in removing the unsatisfactory employee outweighed the temporary interruption of the employee's income while he awaited a post-termination evidentiary hearing. Id. at 167-71, 94 S.Ct. at 1650-52. Justice White, concurring in a third opinion, stated that the only function of a pretermination hearing is to make a "probable-cause determination as to whether the charges brought against the employee are or are not true," id. at 200, 94 S.Ct. at 1666, and that a full hearing need be held only before termination of employment becomes final by way of administrative appeal, id. at 185-86, 94 S.Ct. at 1659-60.
 
 
 20
 In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Court rejected both the "bitter with the sweet" approach of Justice Rehnquist, id. at 538-41, 105 S.Ct. at 1491-93, and the result reached by Justice Powell in his balancing approach, id. at 542-44, 105 S.Ct. at 1493-94. It held that "prior to termination" a classified employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546, 105 S.Ct. at 1495. Although the Court's decision in Loudermill was not handed down until March 19, 1985, some eight months after Zinker received her termination notice, the district court below held that Zinker's right to the pretermination hearing described in Loudermill had been "clearly established by the time of plaintiff's dismissal." We disagree.
 
 
 21
 As most lawyers are well aware, petitions to the United States Supreme Court for certiorari rarely are granted. One of the few situations in which there is even a modicum of likelihood that a petition will be granted is where there is a conflict on a substantial legal issue in the lower courts. See, e.g., Buffalo Forge Co. v. United Steelworkers of America, 428 U.S. 397, 404, 96 S.Ct. 3141, 3146, 49 L.Ed.2d 1022 (1976); United States v. ITT Continental Baking Co., 420 U.S. 223, 225, 95 S.Ct. 926, 928, 43 L.Ed.2d 148 (1975). That was the ground on which the petitioners in Loudermill successfully sought their writ. A review of the record on file in the Supreme Court makes it quite clear that the Loudermill Court was not being asked simply to reiterate "clearly established law."
 
 
 22
 That record discloses that the State of Ohio has a statute, Ohio Rev.Code Ann. Sec. 124.34, that is substantially similar to the Connecticut statutes at issue herein. In Parfitt v. Columbus Correctional Facility, 62 Ohio St.2d 434, 406 N.E.2d 528, cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980), the Ohio Supreme Court, relying primarily on Arnett v. Kennedy, supra, 416 U.S. 134, 94 S.Ct. 1633, held that a pretermination hearing in connection with a dismissal under the Ohio statute was not required by the due process clause of the United States Constitution.
 
 
 23
 In unreported opinions in the companion cases of Loudermill v. Cleveland Board of Education and Donnelly v. Parma Board of Education, District Judge Manos of the Northern District of Ohio reached the same conclusion. In so doing, he relied upon Justice Rehnquist's opinion in Arnett v. Kennedy, supra, 416 U.S. 134, 94 S.Ct. 1633, and the balancing test advocated by Justice Powell in both Arnett and Mathews v. Eldridge, 424 U.S. 319, 334-49, 96 S.Ct. 893, 902-10, 47 L.Ed.2d 18 (1976). "There can be no doubt," Judge Manos said, "that the conclusion of six (6) members of the United States Supreme Court in Arnett v. Kennedy, supra, was that the governmental interest in the safe and efficient operation of governmental functions outweighs the employee's interest in continued employment prior to dismissal so that a pre-dismissal hearing is simply not required."
 
 
 24
 A panel of the Court of Appeals for the Sixth Circuit, with one judge dissenting, reversed. 721 F.2d 550. Judge Timbers, who wrote the majority opinion, recognized that the Supreme Court "has never delineated the situations in which pre-termination hearings are constitutionally required," and that the plurality view in Arnett "has yet to be enshrined in our law." Id. at 560. He adopted Justice Powell's balancing test but tipped the scales in the opposite direction from that of Justice Powell. Judge Wellford relied upon both Justice Rehnquist's opinion and Justice Powell's concurrence in fashioning his dissent. Id. at 564-66.
 
 
 25
 Both Boards of Education petitioned for certiorari, citing Arnett and stressing the fact that the Sixth Circuit's holding conflicted with decisions in other circuits. With respect to the issue of qualified immunity now before us, the fact that similar arguments were made by amici has greater significance. An amicus brief was filed by the Attorneys General of Connecticut, Kansas, Montana, New Jersey, North Dakota, Ohio, Pennsylvania, and Wyoming. Amici's contentions were advanced under the following headings:
 
 
 26
 A. The Opinion Of The Court Below Is Contrary To Decisions Of This Court In That This Court Has Never Interpreted The Due Process Clause Of The Fourteenth Amendment To Require A Pre-Termination Hearing For A Classified Governmental Employee.
 
 
 27
 * * * * * *
 
 
 28
 B. The Opinion Of The Court Of Appeals Is In Conflict With Decisions Of Other Circuit Courts And The Supreme Court Of Ohio.
 
 
 29
 In support of the first argument, amici cited Arnett v. Kennedy, supra, 416 U.S. 134, 94 S.Ct. 1633, Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), and Mathews v. Eldridge, supra, 424 U.S. 319, 96 S.Ct. 893. They also relied on the distinction that the Court drew in Goldberg v. Kelly, 397 U.S. 254, 263-64, 90 S.Ct. 1011, 1018-19, 25 L.Ed.2d 287 (1970), between denial of welfare benefits and loss of employment.
 
 
 30
 In support of the second argument, amici cited Parfitt v. Columbus Correctional Facility, supra, 62 Ohio St.2d 434, 406 N.E.2d 528, Bullock v. Mumford, 509 F.2d 384 (D.C.Cir.1974), Ciechon v. City of Chicago, 634 F.2d 1055 (7th Cir.1980), and Webb v. Dillon, 593 F.2d 656 (5th Cir.1979). Amici also cited Vanelli v. Reynolds School District No. 7, 667 F.2d 773 (9th Cir.1982), and Louise B. v. Coluatti, 606 F.2d 392 (3d Cir.1979), as examples of non-conflicting decisions in other circuits.
 
 
 31
 When the petitions for certiorari were granted, an amicus brief for reversal was filed by the Attorneys General of twenty states. In their opening statement, amici explained their interest in the following words:
 
 
 32
 This case provides the Court with an opportunity to finally resolve the polemics precipitated by its plurality opinion in Arnett v. Kennedy, 416 U.S. 134 [94 S.Ct. 1633, 40 L.Ed.2d 15] (1974) over the degree of procedural due process necessary to protect the federally- or state-created property interests of public employees.
 
 
 33
 They then cited statutes of thirty-eight states which were somewhat similar to section 124.34 of the Ohio Revised Code "in that they provide for an evidentiary hearing following the effective date of termination from employment." Relying upon the holdings of both Justice Rehnquist and Justice Powell, amici urged the Supreme Court to reverse. A similar amicus brief was filed by the National School Boards Association. Although the arguments thus presented were rejected by the Supreme Court, it is significant for our purposes that the official legal representatives of over twenty states were convinced of their merit, in other words that the law was not "clearly established" to the contrary.
 
 
 34
 Appellants in the instant case rely, as did amici in Loudermill, on Bullock v. Mumford, supra, 509 F.2d 384, Ciechon v. City of Chicago, supra, 634 F.2d 1055, and Webb v. Dillon, supra, 593 F.2d 656, in support of their argument that the requirement of a pretermination hearing in public employment cases was not clearly established prior to Loudermill. Appellants also cite Newman v. Board of Education, 594 F.2d 299, 304 (2d Cir.1979), Cohen v. City of Philadelphia, 736 F.2d 81, 84 n. 6 (3d Cir.), cert. denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), and Detweiler v. Commonwealth of Virginia Department of Rehabilitative Services, 705 F.2d 557, 560 (4th Cir.1983), in additional support of that argument. See also Johnson v. Lefkowitz, 566 F.2d 866, 869 (2d Cir.1977), cert. denied, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979); Palmer v. Ticcione, 576 F.2d 459, 464 (2d Cir.1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979); Curlott v. Campbell, 598 F.2d 1175, 1181-82 (9th Cir.1979); Miller v. Williams, 590 F.2d 317, 320-21 (9th Cir.1979); Blair v. Robstown Independent School District, 556 F.2d 1331, 1334-35 (5th Cir.1977); Jacobs v. Kunes, 541 F.2d 222, 224-25 (9th Cir.1976), cert. denied, 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); Chung v. Park, 514 F.2d 382, 385-87 (3d Cir.), cert. denied, 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975); Peacock v. Board of Regents, 510 F.2d 1324, 1327-30 (9th Cir.), cert. denied, 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975); Roberts v. City of Tucson, 122 Ariz. 91, 93, 593 P.2d 645 (1979) (en banc).
 
 
 35
 There are numerous post-Loudermill statements by both judges and commentators to the effect that the Loudermill decision did indeed establish new law. In Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir.1987), the Circuit Court in which the Loudermill holding originated said:
 
 
 36
 Not until the United States Supreme Court's decision in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), were tenured public employees held entitled to a pretermination hearing consisting of "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546, 105 S.Ct. at 1495.
 
 
 37
 See also Brown v. Trench, 787 F.2d 167, 171 (3d Cir.1986); Leftwich v. Bevilacqua, 635 F.Supp. 238, 241 (W.D.Va.1986); Brubaker v. Arizona Department of Economic Security, 156 Ariz. 577, 580-81, 754 P.2d 304, 307-08 (1987); Lee v. South Dakota Department of Health, 411 N.W.2d 108, 111-12 (S.D.1987).
 
 
 38
 Following the Loudermill decision, commentators were in universal accord concerning the unsettled state of pertinent pre-Loudermill law. As one commentator described it, "The Supreme Court had yet to definitely come to grips in those prior cases with the issue of whether or not a state could create a limited property interest in employment--limited, that is, by the statutory procedures enacted for its deprivation--or whether a property interest once conferred was subject to federal constitutional considerations regardless of any statutorily imposed limitations." The commentator concluded that in Loudermill "the Court laid this question to rest." Note, Federal Pre-Termination Rights for State Employees: Cleveland Board of Education v. Loudermill, 105 S.Ct. 1487 (1985), 54 U.Cin.L.Rev. 1069, 1079 (1986). See also Comment, Cleveland Board of Education v. Loudermill: Procedural Due Process Protection for Public Employees, 47 Ohio St.L.J. 1115, 1122 (1986) ("[a]lthough supported by a plurality of only three justices, Justice Rehnquist's opinion in Arnett governed the procedural due process rights of public employees until the Court's recent decision in Cleveland Board of Education v. Loudermill."). As another commentator put it, "[t]hus, before this term's decision [Loudermill ], the controversy was centered on whether the Arnett plurality properly determined the law on this issue, or whether due process requires something more than mere compliance with state-defined procedures." Jaff, Hiding Behind the Constitution: The Supreme Court and Procedural Due Process in Cleveland Board of Education v. Loudermill, 18 Akron L.Rev. 631, 636 (1985). Professor Davis, in the 1989 supplement to his Administrative Law Treatise, said that in Loudermill the Supreme Court "moved the law in two directions at the same time", a result that Professor Davis described as "momentous." Id. at 302.
 
 
 39
 Finally, the fact that Chief Justice Rehnquist was not moved to restate his Arnett position in dissent at any time prior to Loudermill is, in itself, an indication that he did not believe the Court had rejected that position.
 
 
 40
 In short, with respect to those states which, like Connecticut and Ohio, had established statutory procedures governing the dismissal of classified employees, the requirements of federal due process were not clearly established prior to Loudermill. Accordingly, defendants' motions for summary judgment should have been granted. See Buschi v. Kirven, 775 F.2d 1240, 1256 (4th Cir.1985). Since we are directing dismissal of the complaint, it is unnecessary for us to reach the troublesome issue of damages.
 
 
 41
 Reversed and complaint dismissed.
 
 
 
 [1]
 Nancy Zinker died on March 31, 1990, and Joseph Zinker was appointed executor of her estate on May 30, 1990
 
 
 [2]
 All of Zinker's claims other than the due process claims against Doty and Kemp were rejected by either the district court or the jury. We discern no error in these rejections