#25275-aff in pt & rev in pt-GAS

**2010 SD 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOEL DARLING,                                          Claimant and Appellant,

v.

WEST RIVER MASONRY, INC.,                  Employer and Appellee,

and

UNITED FIRE & CASUALTY COMPANY,      Insurer and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LORI S. WILBUR
Judge

\* \* \* \*

MICHAEL J. SIMPSON of
Julius & Simpson, LLP
Rapid City, South Dakota                    Attorneys for appellant.

ERIC C. BLOMFELT
JEREMY D. NAUMAN of
Eric C. Blomfelt & Associates, PC
Denver, Colorado                               Attorneys for appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 16, 2009

OPINION FILED **01/06/10**

#25275

SEVERSON, Justice

[¶1.]     Joel Darling (Darling) appeals the circuit court judgment that the South Dakota Department of Labor (the Department) erred in concluding his work-related injury was a major contributing cause of his disk bulges, nerve impingement, stress fractures, and disk slippage so that the treatment, including surgery, related to those conditions was compensable.  We affirm in part and reverse in part.

## BACKGROUND

[¶2.]     Darling has worked as a stone mason most of his adult life.  West River Masonry, Inc. (West River Masonry) has employed Darling as a stone mason since 2001.  In 1989, Darling strained his back and consequently missed approximately nine months of work.  He recovered and did not have any problems with his back until January 2005.  During that fifteen-year period, Darling never saw a doctor or missed work for low back pain.

[¶3.]     On January 15, 2005, Darling was carrying concrete blocks down a stairway into the basement of the Adams Museum in Deadwood, South Dakota.  It was cold and snowy that day, so Darling and his co-workers carefully cleaned and sanded the steps of the stairway.  A smooth concrete landing with a nine-inch step was at the bottom of the stairway.  Darling was carrying two concrete blocks weighing 35 to 40 pounds when he slipped on the concrete landing.  His feet came out from under him and his lower back hit the edge of the nine-inch step.  Darling felt pain immediately, but continued to work because he did not believe his injury was serious.  The pain in his low back, left side, and left leg steadily increased

throughout the day. When Darling finished work, the pain had progressed to the point that he could barely walk. Darling's wife helped him into his house when he arrived home, and he used his daughter's crutches to get to the emergency room as he could not bear any weight on his left leg.

[¶4.] Dr. Vosler treated Darling at the emergency room. Dr. Vosler directed Darling to take a few days off work and prescribed Percocet to relieve his pain. Darling again saw Dr. Vosler on January 24, 2005. At that time, Dr. Vosler noted Darling had bruises across his mid-lumbar spine and left proximal femur. Dr. Vosler prescribed additional pain medications for Darling, including Ibuprofen and Vicoden. Shortly thereafter, Dr. Vosler approved Darling's request to return to work under certain conditions. Darling later saw Dr. Vosler in March 2005. Although Darling indicated that his leg pain had subsided, he was still experiencing pain in his low back. Dr. Vosler prescribed physical therapy or chiropractic treatment.

[¶5.] Darling saw Dr. Brett Lawlor, a rehabilitation medicine specialist, on May 27, 2005. Dr. Lawlor diagnosed Darling with discogenic low back pain and possible SI and facet dysfunction. Dr. Lawlor recommended physical therapy and pain medication. He also ordered an MRI, which showed degenerative disc disease at L3-L4, L4-5, and L5-SI, facet hypertrophy at L3-L4 and L4-5, and mild foraminal stenosis. The radiologist's report did not mention disk bulges, nerve impingement, stress fractures, or disk slippage. Over the next year, Dr. Lawlor treated Darling with facet, epidural, and joint injections, neuromuscular electrostimulation, and pain medications, but to no avail. On March 14, 2006, Dr. Lawlor discussed surgery

with Darling, but Darling indicated he was not yet willing to undergo surgery. Darling underwent a Functional Capacities Evaluation (FCE) on April 10, 2006. Dr. Lawlor assigned Darling a five-percent whole-person impairment for the lumbar spine. He also restricted Darling to lifting no more than fifty pounds occasionally or thirty pounds frequently. The FCE did not preclude Darling from twisting or bending.

[¶6.] On May 12, 2006, Darling was playing baseball in his yard with his son. As Darling was demonstrating a swing, though not taking a full swing, he felt a popping sensation accompanied by sudden and severe pain. Darling immediately experienced severe left leg pain so that he could barely walk. He used the baseball bat and a handrail to support his weight as he walked back to his house.

[¶7.] Darling returned to Dr. Lawlor who prescribed physical therapy and ordered a second MRI. The radiologist's report for this second MRI noted stress fractures at L4-5 with disk slippage of L4 and L5, moderate canal stenosis and left lateral stenosis, mid-grade I degenerative anterior stress fracture at L5-SI bilaterally, and disk bulges and facet athrosis with obvious neural impingement. Dr. Lawlor recognized that the disk bulges, nerve impingement, and stress fractures were not noted on the June 2005 MRI report. Dr. Lawlor felt the current course of treatment was not adequate and referred Darling to Dr. Rand Schleusener, an orthopedic surgeon, for surgical consultation. Dr. Schleusener recommended surgery to decrease pain and nerve impingement associated with the disk narrowing and bulging, as well as the disk slippage caused by the stress fractures.

[¶8.]    A hearing on Darling's workers' compensation claim was held before the Department on November 13, 2007. At that hearing, Darling testified and presented the deposition testimony of Drs. Lawlor and Schleusener. Drs. Lawlor and Schleusener believed Darling's January 2005 injury was a major contributing cause of his current condition and need for treatment, including surgery. West River Masonry presented the deposition testimony of Dr. Greg Reichhardt. Dr. Reichhardt believed the January 2005 injury was not a major contributing cause of Darling's current condition and need for surgery. He testified the surgery was needed to treat disk bulges, nerve impingement, and stress fractures, injuries not present prior to the May 2006 incident as demonstrated by the June 2005 MRI report. He concluded Darling was not entitled to workers' compensation benefits for any treatment related to those conditions. On June 5, 2008, the Department found West River Masonry responsible for Darling's ongoing medical expenses, including the cost of surgery. West River Masonry filed a notice of appeal with the Sixth Judicial Circuit Court on July 7, 2008.

[¶9.]    The circuit court, per the Honorable Lori S. Wilbur, affirmed in part and reversed in part. The circuit court affirmed the Department to the extent the Department found a causal relationship between Darling's January 2005 injury and his general current condition. However, the circuit court reversed to the extent the Department found a causal relationship between Darling's January 2005 injury and his disk bulges, nerve impingement, stress fractures, and disk slippage. The circuit court concluded Darling was not entitled to workers' compensation benefits for any treatment, including surgery, related to those conditions. Darling appeals.

## STANDARD OF REVIEW

[¶10.]    The standard of review in administrative appeals is established by SDCL 1-26-37.  Under this statute, "the applicable standard of review 'will vary depending on whether the issue is one of fact or one of law.'"  Orth v. Stoebner & Permann Constr., Inc., 2006 SD 99, ¶27, 724 NW2d 586, 592 (quoting Tischler v. U.P.S., 1996 SD 98, ¶23, 552 NW2d 597, 602).  The actions of the agency are judged by the clearly erroneous standard when the issue is a question of fact.  Id.  The actions of the agency are fully reviewable when the issue is a question of law.  Id.  "Mixed questions of law and fact require further analysis."  McNeil v. Superior Siding, Inc., 2009 SD 68, ¶6, 771 NW2d 345, 347 (citing Permann v. S.D. Dep't of Labor, 411 NW2d 113, 119 (SD 1987)).

> If application of the rule of law to the facts requires an inquiry that is "essentially factual" – one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct" – the concerns of judicial administration will favor the district court, and the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard.  If, on the other hand, the question requires us to consider legal precepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

Id. ¶6, 771 NW2d at 347-48 (quoting United States v. McConney, 728 F2d 1195, 1202 (9th Cir 1984)) (internal citations omitted).  See In re Dorsey & Whitney Trust Co., LLC, 2001 SD 35, ¶¶5-6, 623 NW2d 468, 471.  Finally, the matter is reviewed de novo when "an agency makes factual determinations on the basis of documentary evidence, such as depositions" or medical records.  Vollmer v. Wal-Mart Store, Inc.,

2007 SD 25, ¶12, 729 NW2d 377, 382 (citing Watertown Coop. Elevator Ass'n v. S.D. Dep't of Rev. and Reg., 2001 SD 56, ¶10, 627 NW2d 167, 171).

## DECISION

[¶11.] In a workers' compensation dispute, a claimant must prove all elements necessary to qualify for compensation by a preponderance of the evidence. Titus v. Sioux Valley Hosp., 2003 SD 22, ¶11, 658 NW2d 388, 390 (citation omitted). The fact that an employee may have suffered a work-related injury does not automatically establish entitlement to benefits for his current claimed condition. Haynes v. McKie Ford, 2004 SD 99, ¶17, 686 NW2d 657, 661. The claimant must establish that his work-related injury is a major contributing cause of his current claimed condition and need for treatment. *Vollmer*, 2007 SD 25, ¶14, 729 NW2d at 382-83 (citation omitted). An employee need only prove his work-related injury is "a" major contributing cause of his current claimed condition. Brown v. Douglas Sch. Dist., 2002 SD 92, ¶23, 650 NW2d 264, 271.

[¶12.] A claimant need not prove his work-related injury is a major contributing cause of his condition to a degree of absolute certainty. Brady Mem'l Home v. Hantke, 1999 SD 77, ¶16, 597 NW2d 677, 681 (citations omitted). Causation must be established to a reasonable degree of medical probability, not just possibility. Truck Ins. Exch. v. CNA, 2001 SD 46, ¶19, 624 NW2d 705, 709 (citing Enger v. FMC, 1997 SD 70, ¶18, 565 NW2d 79, 85). The evidence must not be speculative, but must be "precise and well supported." *Vollmer*, 2007 SD 25, ¶14, 729 NW2d at 382 (quoting Horn v. Dakota Pork, 2006 SD 5, ¶14, 709 NW2d 38, 42).

[¶13.]    The testimony of medical professionals is crucial in establishing the causal relationship between the work-related injury and the current claimed condition "because the field is one in which laypersons ordinarily are unqualified to express an opinion." *Id.* (quoting Rawls v. Coleman-Frizzell, Inc., 2002 SD 130, ¶21, 653 NW2d 247, 252 (quoting Day v. John Morrell & Co., 490 NW2d 720, 724 (SD 1992))). No recovery may be had where the claimant has failed to offer credible medical evidence that his work-related injury is a major contributing cause of his current claimed condition. SDCL 62-1-1(7). Expert testimony is entitled to no more weight than the facts upon which it is predicated. Schneider v. S.D. Dep't of Transp., 2001 SD 70, ¶16, 628 NW2d 725, 730 (citations omitted).

[¶14.]    We consider anew the medical expert testimony on causation in this case because it was presented through deposition. *Vollmer*, 2007 SD 25, ¶12, 729 NW2d at 382 (citation omitted). Darling argues the January 2005 injury is a major contributing cause of his current condition and need for treatment, including surgery. He offered the opinions of Drs. Lawlor and Schleusener in support of this contention. West River Masonry argues Darling has not proven to a reasonable degree of medical probability that the January 2005 injury is a major contributing cause of his current condition and need for surgery. Dr. Reichhardt testified the surgery is needed to treat disk bulges, nerve impingement, and stress fractures, injuries not present prior to the May 2006 incident as demonstrated by the June 2005 MRI report. He concluded Darling is not entitled to workers' compensation benefits for any treatment related to those conditions.

[¶15.]    We must first consider whether the January 2005 injury is a major contributing cause of Darling's general current condition.  The testimony of Drs. Lawlor and Schleusener demonstrates that the May 2006 incident was an exacerbation of Darling's January 2005 injury.  While Darling was assigned maximum medical improvement in April 2006, he was still experiencing severe pain at that time.  Darling's description of the pain experienced after the May 2006 incident is similar to his description of the pain experienced after the January 2005 injury.  In Darling's words, after the May 2006 incident, he experienced the "same kind of pain, same location, same intensity."  He "didn't think it was anything new, just a continuation or flare-up" since it "mimicked the symptoms of the earlier injury."  Drs. Lawlor and Schleusener noted Darling's pain initially worsened after the May 2006 incident, but eventually subsided to the same degree as before the incident.  Dr. Reichhardt disputed this fact, but did not review Darling's medical records after June 2006.  He thus cannot know Darling's condition after that date.  Darling has demonstrated to a reasonable degree of medical probability that the January 2005 injury is a major contributing cause of his general current condition.

[¶16.]    We must next consider whether the January 2005 injury is a major contributing cause of Darling's need for surgery.  The testimony of Drs. Lawlor and Schleusener demonstrates that the stress fractures were caused by the January 2005 injury.  The June 2006 MRI report noted Darling had a stress fracture at two levels.  Dr. Schleusener testified that a stress fracture at one level is often indicative of a degenerative condition, while a stress fracture at two levels is often the result of a single traumatic event.  Dr. Schleusener did not believe the May

2006 incident contributed enough force to cause a stress fracture at two levels. Rather, the hyperextension injury Darling suffered in January 2005 was a single traumatic event likely to have caused a stress fracture at two levels. Additionally, Drs. Lawlor and Schleusener noted bridging osteophytes, attempts by the body to heal stress fractures, in the June 2006 MRI. Bridging osteophytes take years to develop. The presence of the bridging osteophytes in the June 2006 MRI indicates the stress fractures were present before the May 2006 incident. It is undisputed the stress fractures have resulted in disk slippage. Therefore, Darling has demonstrated to a reasonable degree of medical probability that the January 2005 injury is a major contributing cause of his stress fractures and disk slippage.

[¶17.]    West River Masonry contends Darling has not presented credible medical evidence that the January 2005 injury is a major contributing cause of the disk bulging or stress fractures so that he is not entitled to workers' compensation benefits for the treatment of those conditions, namely surgery. However, surgery is necessary not only to treat nerve impingement caused by disk bulging, but also disk slippage caused by stress fractures. Darling has demonstrated to a reasonable degree of medical probability that the January 2005 injury is a major contributing cause of the stress fractures and disk slippage. Significantly, Darling and Dr. Lawlor discussed the possibility of corrective surgery two months before the May 2006 incident. For these reasons, Darling has demonstrated to a reasonable degree of medical probability that the January 2005 injury is a major contributing cause of his current condition and need for treatment, including surgery.

[¶18.] West River Masonry argues that because the disk bulges, nerve impingement, stress fractures, and disk slippage were not noted in the June 2005 MRI report, they did not then exist and must have been caused by the May 2006 incident. This argument relies on a "false connection between causation and temporal sequence." *Rawls*, 2002 SD 130, ¶20, 653 NW2d at 252 (citation omitted). Arguments relying solely on temporal sequence have "little value in the science of fixing medical causation." *Id.* That these conditions were not noted in the June 2005 MRI report does not mean they did not then exist. This is especially true because the MRI reports were prepared by two different radiologists. Additionally, even if these conditions had not yet manifested in June 2005, the January 2005 injury was still likely a major contributing cause of those conditions. Dr. Schleusener testified that the fact the June 2005 MRI did not show disk bulges would not change his opinion that the January 2005 injury was a major contributing cause of Darling's current condition. Ultimately, West River Masonry advances a very limited evaluation of the causation requirement.

[¶19.] West River Masonry similarly makes much of the fact that Drs. Lawlor and Schleusener did not examine the films of the June 2005 and June 2006 MRIs. They assert Darling has not presented "precise and well supported" medical expert testimony and cannot meet his burden. *See Vollmer*, 2007 SD 25, ¶14, 729 NW2d at 382 (citation omitted). We decline to judge the weight and credibility of the medical expert testimony on such a limited basis. Indeed, the record indicates Dr. Reichhardt, like Drs. Lawlor and Schleusener, did not view the films of the June 2005 and June 2006 MRIs. He, like Drs. Lawlor and Schleusener, reviewed the

radiologists' reports. Dr. Reichhardt's opinions regarding the MRI reports, therefore, should be given no more weight than the opinions offered by Drs. Lawlor and Schleusener. To the contrary, the opinions of Drs. Lawlor and Schleusener, Darling's treating physicians, should be given substantial weight when compared to the opinion of Dr. Reichhardt, which was prepared after a review of medical records.

[¶20.] We have engaged in a comprehensive analysis of the expert medical testimony in this case. In affording the appropriate weight to the expert medical testimony of Drs. Lawlor, Schleusener, and Reichhardt, we affirm the circuit court's grant of benefits for treatment of Darling's general condition, but reverse the circuit court's denial of benefits for treatment, including surgery, relating to Darling's disk bulges, nerve impingement, stress fractures, and disk slippage.

[¶21.] Affirmed in part, reversed in part.

[¶22.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.