#29091-a-DG
**2021 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TAYLOR HUGHES,                    Claimant and Appellee,

v.

DAKOTA MILL AND GRAIN, INC.
and DAKOTA TRUCK UNDERWRITERS,      Employer, Insurer and
Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRISTINA L. KLINGER
Judge

\* \* \* \*

BRAD J. LEE of
Beardsley, Jensen & Lee, Prof. PLLC
Rapid City, South Dakota          Attorneys for claimant and
appellee.


CHARLES A. LARSON
LAURA K. HENSLEY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota         Attorneys for employer, insurer,
and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
APRIL 20, 2020
OPINION FILED **05/12/21**

#29091

GILBERTSON, Retired Chief Justice

[¶1.]     Taylor Hughes filed a workers' compensation claim for an alleged work-related back injury. The Department of Labor (Department) denied his claim because he failed to meet his burden of proof. The circuit court reversed the Department's decision. It held Hughes was entitled to recover for his injury. The employer and its insurer appeal. We affirm.

## Facts and Procedural History

[¶2.]     Hughes worked various construction and heavy labor jobs from the time he left high school in ninth grade (2004) until his employment with Dakota Mill & Grain in 2017. In 2010, he began having back pain after three years of doing general construction and operating heavy machinery for Rose Construction. Hughes testified that he became aware of his first back injury after he woke up one morning and experienced serious back pain. For this injury, he saw a doctor after a few weeks when the pain started radiating down his left leg. In January 2011, Hughes had a lumbar microdiscectomy. He had to have another microdiscectomy in August 2011, because a painful cyst grew over the site of the first surgery.

[¶3.]     Hughes reported that he experienced no back problems after the second surgery. However, his medical records reflected that he had an injection in August 2012 for pain in his back and left leg, and he refilled his hydrocodone prescription periodically in 2012 and 2013. Hughes was also electrocuted on a job in 2014 and reported some temporary back pain from the incident. Hughes testified that he had no real symptoms from 2014 to 2017 but would occasionally slow down

-1-

at work to avoid another back injury when his left leg or toes would start feeling numb.

[¶4.]     Hughes completed a physical before starting work with Dakota Mill & Grain in 2017. During the physical, he reported no symptoms, and the examining doctor approved Hughes to work with no restrictions. Hughes's job with Dakota Mill & Grain involved heavy labor, including: unloading trucks, dumping grain into grain bins or train cars, maintaining belts and equipment, pouring concrete, landscaping, and performing other activities as needed. During the two weeks leading up to the at-issue incident, Hughes was removing a concrete floor in order to move pipes underground. To complete the project, Hughes used a concrete saw, jackhammer, and a Bobcat.

[¶5.]     Hughes claimed that on Thursday, June 22, 2017, as he was finishing the project, he exited the Bobcat and fell, feeling a pain in his back. He testified that the Bobcat jostles a person around because it has no shock absorbers. Hughes told his supervisor, Jeremy Hand, and the office manager, Brittany Huber, that he was sore and requested to take some time off to recuperate. He went home for a few hours then felt well enough to return to work and performed light-duty work for the remainder of the day. That day, Hughes did not document the injury or seek medical attention. The following day, he did light-duty work for a full 9.5-hour day and then took the weekend off. He attended Oahe Days in Pierre that weekend, listening to the bands and watching the rodeo. He testified that his soreness increased over the weekend, but not greatly.

[¶6.] On Monday, June 26, Hughes woke up and got ready for work. He testified that around 7 a.m. he tried to get off his couch and his legs collapsed. Hughes claimed the pain prohibited him from getting up, and he had to call his mother to take him to the emergency room. The emergency room record contains Hughes's statement of the events but does not mention that he fell out of the Bobcat. It also reflects the date his pain started as June 26.

[¶7.] An MRI reflected a herniated disc creating a bulge in his lower back. To treat the pain, he received multiple steroid injections in his spine. He also received physical therapy and medications, with surgery being a future option. Hughes testified that his pain was in a similar area as his 2010 and 2011 pain, but the at-issue pain radiates with more intensity, and he now feels pain in both his right and left leg. On June 29, Hughes filed a report of injury with Dakota Mill & Grain and made a workers' compensation claim.

[¶8.] Hughes consulted Dr. James MacDougall in July 2017 and October 2017. Dr. MacDougall compared Hughes's MRIs from 2011 and 2012 to his 2017 MRI. He found that the MRIs showed an increased herniation at L4-5 in Hughes's spine. In his deposition, Dr. MacDougall testified that Hughes's pain in one leg changing to pain in both his legs offered more indication of the injury's occurrence than the slight change in the MRIs. He also stated that the type of work Hughes had been performing supported that work activities could have caused the injury. Dr. MacDougall based his opinion on Hughes's recitation of the events, Hughes being asymptomatic prior to employment at Dakota Mill, and Hughes's medical

records.  His overall opinion was that "work could be considered a major contributing factor in this current problem."

[¶9.]    Dr. Grant Shumaker examined Hughes and his medical records on behalf of Dakota Mill & Grain and its insurer, Dakota Truck Underwriters (collectively Dakota Mill).  Dr. Shumaker based his opinion on Hughes's reported pain symptoms beginning June 26, whereas Dr. MacDougall relied on Hughes's symptoms starting June 22.  Dr. Shumaker concluded that work was not clearly a major contributing factor of Hughes's injury, because he believed Hughes's story differed from the documentation of his injury and his medical records.  However, he stated that work activities "may have been a contributing cause, but I can't say that they were the major contributing cause given his story."  He noted the change in Hughes's MRIs between 2012 and 2017 could show a natural progression of a degenerative back condition rather than a specific injury.  Dr. Shumaker could not say with medical certainty which caused Hughes's injury.

[¶10.]    After a hearing, the Department concluded that Hughes had not proven by a preponderance of the evidence that his disability "was caused by a work place injury" and that his work activities were "a major contributing cause" of his disability.  The Department found that Hughes's version of the events was not credible in comparison to the medical records.  It also rejected Dr. MacDougall's opinion because it was based on Hughes's version of events and was not persuasive. The Department determined that other factors contributed to Hughes's injury so that Hughes's work activities could not qualify as a "cause which cannot be exceeded[.]"  Hughes appealed to the circuit court.

[¶11.] The circuit court reversed the Department's decision. It determined that the Department erred as a matter of law by applying the incorrect standard to the causation of the injury, and the Department's finding that Hughes failed to establish causation was clearly erroneous. It also determined that the Department committed an error of law by applying the wrong definition to "a major contributing cause," and the Department's finding that Hughes did not establish that his work activities were a major contributing cause was clearly erroneous. It based its decision on the medical experts' depositions, medical records, and hearing testimony. Dakota Mill appeals, raising four issues which we condense and restate:*

> 1. Whether the Department erred in determining Hughes had not established an injury arising out of his employment.
>
> 2. Whether the Department erred in determining Hughes had not established that his work activities were a major contributing cause of his condition.

## Analysis and Decision

[¶12.] We review the Department's decision in the same manner as the circuit court. SDCL 1-26-37. The Department's factual findings are given great weight and will be overturned only if they are clearly erroneous. SDCL 1-26-36;

---

* Dakota Mill sought review of the Department's finding on Hughes's credibility. We need not address this issue because we support our holding with evidence independent of Hughes's statement of the events, such as the unchallenged testimony of his co-workers Hand and Huber who testified to the events on June 22. Dakota Mill also requested review of whether the Department erred in determining Hughes's expert's testimony was insufficient to meet his burden of proof. We address this matter under issue two.

*Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366. "The test is whether after reviewing the evidence we are left with a definite and firm conviction that a mistake has been made." *Schneider v. S.D. Dep't of Transp.*, 2001 S.D. 70, ¶ 10, 628 N.W.2d 725, 728 (quoting *Truck Ins. Exch. v. Kubal*, 1997 S.D. 37, ¶ 9, 561 N.W.2d 674, 676). We review the Department's factual determinations based on documentary evidence, such as depositions and medical records, de novo. *Peterson v. Evangelical Lutheran Good Samaritan Soc'y*, 2012 S.D. 52, ¶ 19, 816 N.W.2d 843, 849. The Department's conclusions of law are fully reviewable. *Darling*, 2010 S.D. 4, ¶ 10, 777 N.W.2d at 366.

### 1. Whether the Department erred in determining Hughes did not establish an injury arising out of his employment.

[¶13.] A workers' compensation claimant has the burden of proving all necessary elements for qualification by a preponderance of the evidence. *Id.* ¶ 11, 777 N.W.2d at 367. An injury is compensable only if it is an "injury arising out of and in the course of the employment[.]" SDCL 62-1-1(7). Both factors, which we construe liberally, must be established, and "the strength of one factor [may] make up for the deficiencies in strength of the other." *Fair v. Nash Finch Co.*, 2007 S.D. 16, ¶ 9, 728 N.W.2d 623, 628 (citation omitted).

[¶14.] For an "injury to 'arise out of' the employment, the employee must show that there is a 'causal connection between the injury and the employment.'" *Id.* ¶ 10, 728 N.W.2d at 629 (quoting *Bender v. Dakota Resorts Mgmt. Grp., Inc.*, 2005 S.D. 81, ¶ 10, 700 N.W.2d 739, 742). "The injury 'arose out of the' employment if: 1) the employment contributes to causing the injury; 2) the activity is one in

which the employee might reasonably engage; or 3) the activity brings about the disability upon which compensation is based." *Id.* (quoting *Bender*, 2005 S.D. 81, ¶ 10, 700 N.W.2d at 742). "[T]he employee must show that [his] employment was a '*contributing factor*' to [his] injury." *Orth v. Stoebner & Permann Constr., Inc.*, 2006 S.D. 99, ¶ 32, 724 N.W.2d 586, 592-93 (quoting *Brown v. Douglas Sch. Dist.*, 2002 S.D. 92, ¶ 19, 650 N.W.2d 264, 270) (second and third alterations in original) (emphasis in original).

[¶15.] The phrase "'in the course of employment' refer[s] to the time, place and circumstances of the injury." *Bender*, 2005 S.D. 81, ¶ 11, 700 N.W.2d at 742 (quoting *Bearshield v. City of Gregory*, 278 N.W.2d 166, 168 (S.D. 1979)). "An employee is considered within his course of employment if he is doing something that is either naturally or incidentally related to his employment or which he is either expressly or impliedly authorized to do by the contract or nature of the employment." *Id.* (citation omitted) (internal quotation marks omitted).

[¶16.] In its analysis of whether Hughes's injury arose out of and in the course of his employment, the Department concluded that Hughes "failed to prove by a preponderance of the evidence that his disability was *caused* by a work place injury." (Emphasis added.) As the circuit court correctly noted, however, the Department applied the incorrect standard. This was an error of law. The correct standard is whether Hughes's work activities contributed to his injury. *See Orth*, 2006 S.D. 99, ¶ 32, 724 N.W.2d at 592-93.

[¶17.] After examining the Department's findings under the correct standard, it is clear that Hughes established by a preponderance of the evidence that his

injury arose out of and in the course of his employment. First, prior to Hughes starting employment with Dakota Mill, Hughes underwent a physical examination. As the Department found, the examination reported that Hughes had no symptoms and felt "100 percent[.]" The Department then found that on June 22, the day of the incident, Hughes informed Hand and Huber, his supervisor and the office manager, that he was sore and needed to take time off. Both testified at the hearing as to these events and their credibility has not been challenged in these proceedings. The report from the insurance adjuster also confirmed that Hughes informed Hand and Huber on June 22 that his back was sore. The Department further found that when Hughes returned to work at Dakota Mill, on June 22, he performed only light-duty work that day and the following day. This work, the Department determined, required bending, twisting, and turning, which are activities that would aggravate one's back, and Hughes reported feeling some pain in performing these tasks. On June 26, after Hughes's legs collapsed and his mother took him to the emergency room, the emergency room records revealed that Hughes's activities on June 22 included the heavy work of jack hammering and a lot of lifting. Finally, Dr. Shumaker conceded that the activities of landscaping and concrete work could have been a contributing cause to the injury Hughes sustained. Therefore, based on the Department's findings and the presented evidence, Hughes met his burden of proof as to this issue.

### 2. *Whether the Department erred in determining Hughes did not establish that his work activities were a major contributing cause of his condition.*

[¶18.]     Both the Department and the circuit court noted, and neither party disputes, that Hughes had a preexisting back condition at the time of his most recent work injury.  Under SDCL 62-1-1(7)(b), "[i]f the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment[.]"

[¶19.]     "Issues of causation in workers['] compensation cases are factual issues that are best determined by the Department." *Holscher v. Valley Queen Cheese Factory*, 2006 S.D. 35, ¶ 29, 713 N.W.2d 555, 564 (citation omitted).  However, here, the circuit court correctly held that the Department used the incorrect definition for determining whether Hughes's work activities were a major contributing cause of his condition.  It then correctly reversed the Department's decision that Hughes had not met his burden on this point.  We agree that the Department incorrectly used a statement from *Orth* as a basis for defining a major contributing cause as "[a] cause which cannot be exceeded[.]"  2006 S.D. 99, ¶ 42, 724 N.W.2d at 596.  The Department used this statement to reach its conclusion that "[a] forty percent cause does not meet this threshold because sixty percent of Claimant's condition was caused by other factors; any of which could have exceeded forty percent."  This percentage appears to have come from a hypothetical question, not based on

applicable percentages, posed by the questioning party to Dr. MacDougall during his deposition. Thus, the record does not support the percentages.

[¶20.]    A claimant is not required to prove that his or her work activities are at least 50% attributable to his or her condition in order to show that those activities were a major contributing cause of the condition. A claimant also does not need to show that there was a single cause of injury. Accordingly, a claimant is "not required to prove that his employment was the proximate, direct, or sole cause of his injury." *Smith v. Stan Houston Equip. Co.*, 2013 S.D. 65, ¶ 16, 836 N.W.2d 647, 652. Further, the claimant's work activities do not have to be "'the' major contributing cause" of the injury; they only have to be "'a' major contributing cause." *Peterson*, 2012 S.D. 52, ¶ 21, 816 N.W.2d at 850 (citation omitted).

[¶21.]    It is well settled that "[a]n injury is compensable only if it is established by medical evidence[.]" SDCL 62-1-1(7). "Causation must be established to a reasonable degree of medical probability, not just possibility." *Darling*, 2010 S.D. 4, ¶ 12, 777 N.W.2d at 367 (citation omitted). Dr. Shumaker concluded that he could not determine to a reasonable degree of medical certainty that Hughes's work activities were a major contributing cause of his condition. In contrast, Dr. MacDougall determined that Hughes's work activities were a major contributing factor in causing his current condition. The Department found Dr. Shumaker's testimony more persuasive than Dr. MacDougall's. Because both doctors presented their testimony through depositions, we review the medical evidence under the de novo standard of review. *See Peterson*, 2012 S.D. 52, ¶ 19, 816 N.W.2d at 849. After our independent review of the medical experts' testimony,

contrary to the Department's determination, we believe the testimony of Dr. MacDougall to be more reliable for several reasons.

[¶22.]     Based upon our review of the record, it is apparent that Dr. Shumaker applied an incorrect standard to determine the causation a claimant must show.  He required Hughes to show that his employment was the "predominate cause" or *the* "major contributing cause" of his current condition and need for treatment.  On the other hand, Dr. MacDougall understood the appropriate standard.  When asked what is "a major contributing cause," Dr. MacDougall responded, "the factor that is a major contributing cause has to be . . . not the only cause, not the most significant cause, just a major contributing cause[.]"  Dr. MacDougall applied the appropriate standard.  A claimant's work activities must be "'a' major contributing cause."  *Id.* ¶ 21, 816 N.W.2d at 850.

[¶23.]     In reaching his conclusions, Dr. Shumaker also failed to examine key information.  "The value of the opinion of an expert witness is no better than the facts upon which it is based.  It cannot rise above its foundation and proves nothing if its factual basis is not true.  It may prove little if only partially true."  *Johnson v. Albertson's*, 2000 S.D. 47, ¶ 25, 610 N.W.2d 449, 455 (citation omitted).  Dr. Shumaker did not review the record from Hughes's employment physical, which showed that Hughes had no complaints of pain prior to his employment with Dakota Mill, or the information from his supervisor and co-worker stating that Hughes reported pain or soreness on June 22.

[¶24.]     Further, Dr. Shumaker's determination that Hughes's pain started on June 26 and his finding that Hughes's work activities were not a major contributing

cause go against the presented evidence. As noted above, Hughes began work in 2017 with Dakota Mill symptom free. His last injection for back pain was August 2012, and he last refilled his hydrocodone prescription in 2013. For roughly five months, Hughes routinely worked fifty to sixty hours per week with Dakota Mill and reported no back pain. His manager reported that he volunteered for extra work, routinely put in long hours, and, prior to the incident, had not asked to take time off during the work day for back pain. Further, both Hughes's manager and Dakota Mill's insurer reported that Hughes experienced back pain or soreness on June 22. Contrary to Hughes's normal work habits, he requested to take a break. He was then only able to perform light-duty work for the remainder of the day and the following day. As the Department found, Hughes "continued to experience some pain[.]" Both experts agreed: Hughes's MRIs from 2012 to 2017 show an increase in the bulge at L4-5, Hughes's pain increased from running down one leg to both legs, and Hughes last received treatment for back pain in 2014. Finally, Dr. Shumaker stated that, while he had difficulty assuming the pain started on June 22, if he assumed that fact and that Hughes had performed heavy work the two weeks prior to the incident then he "believe[d] that you could potentially make a fairly solid claim that the work exposure was the major contributing cause."

[¶25.] The testimony of Dr. MacDougall, which established that Hughes's work activities were a major contributing cause of his current condition and need for treatment, was supported by documentary evidence and the testimony of Hughes's co-workers. Accordingly, the circuit court correctly determined that the Department committed an error of law by applying the incorrect standard and in

entering a clearly erroneous finding that Hughes failed to prove by a preponderance of the evidence that his work injury was a major contributing cause of his current condition.

## Conclusion

[¶26.] The circuit court properly overturned the Department's decision. Hughes proved by a preponderance of the evidence that his injury arose out of and in the course of his employment and that his employment was a major contributing cause of his current condition. We affirm.

[¶27.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

[¶28.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.