#30859-r-MES
**2025 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JODY PHAM,                                              Claimant and Appellee,

    v.

SMITHFIELD FOODS, SIOUX FALLS,          Employer, Self-Insurer, and
                                                                Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

LAURA K. HENSLEY
KRISTIN N. DERENGE of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                    Attorneys for employer, self-
                                                      insurer, and appellant.


DAVID J. KING
BRENDAN F. PONS of
King Law Firm, P.C.
Sioux Falls, South Dakota                    Attorneys for claimant
                                                      and appellee.

\* \* \* \*

ARGUED
APRIL 30, 2025
OPINION FILED **07/23/25**

#30859

SALTER, Justice

[¶1.]     Jody Pham injured her neck and right shoulder while working at Smithfield Foods, a self-insured employer. Smithfield accepted the injury as a compensable workers' compensation claim and, without a hearing or settlement agreement, continued to pay workers' compensation benefits for over two years. However, in 2018, Smithfield stopped paying medical benefits because it believed Pham's employment was no longer a major contributing cause of her need for additional treatment. Pham filed a petition for hearing with the Department of Labor and Regulation (the Department), and an administrative law judge (ALJ) determined that Pham failed to meet her burden to establish causation. Pham appealed to the circuit court which reversed the ALJ's decision, reasoning that by initially accepting Pham's claims as a compensable injury, the burden shifted to Smithfield to show a change in circumstances to justify suspending benefits. Smithfield appeals. We reverse the circuit court and reinstate the ALJ's decision.

**Factual and Procedural Background**

[¶2.]     Jody Pham was born and attended school in Vietnam. She immigrated to the United States in 1994 and spent three months in Houston before moving to Sioux Falls. She began working at Smithfield, which was then John Morrell's, in 1996. She briefly left seeking warmer weather in Florida but returned to Sioux Falls after a little over a year. She was rehired at Smithfield in 2008 and has worked in the bacon department since then.

[¶3.]     Pham reported neck and right shoulder issues to her manager in August 2015. Her manager completed an employer's first report of injury, and

-1-

Smithfield internally placed her on a medical management plan, consisting of heating and massages. After experiencing no improvement, Pham asked to see a doctor, so Smithfield scheduled an appointment with Dr. Bruce Alden Elkins at Avera Medical Group (AMG) Occupational Medicine and voluntarily began making medical payments in accordance with South Dakota's workers' compensation system.

[¶4.] On October 14, 2015, Pham first visited Dr. Elkins, who noted the repetitive nature of Pham's physically demanding job and diagnosed her with sprained ligaments of her cervical spine and a strained right shoulder. Dr. Elkins recommended conservative treatment and determined that Pham could return to work with no restrictions. In subsequent visits to AMG Occupational Medicine, Pham reported her right shoulder and neck pain were improving but noted persistent headaches with increasing severity. For her headaches, she was advised to follow up with her primary care physician.

[¶5.] Smithfield continued to pay for Pham's medical treatment until mid-2018. Perhaps most notable in this timeframe was Pham's first surgery—a cervical discectomy and fusion performed by Dr. Wissam Asfahani on April 19, 2017. The surgery followed Pham's complaints of numbness in her fingers and tingling in her arms, as well as a subsequent December 2016 MRI, which revealed herniated C5-6 discs that were compressing Pham's C6 nerve root. Though Dr. Asfahani did not directly answer Smithfield's request to offer an opinion as to whether Pham's employment was a major contributing cause of the need for surgery, Smithfield ultimately paid for the surgery and related workers' compensation benefits.

[¶6.]     Following surgery, Pham was placed on no-work status for three months. She began physical therapy with Dawn Williams in June 2017 and returned to work with temporary restrictions on July 24. Further, Dr. Asfahani referred Pham to Dr. Travis Liddell at CORE Orthopedics, who ordered "a baseline upper extremity EMG" during his initial evaluation. Dr. Todd Zimprich with AMG Neurology conducted the EMG on August 31 and noted the results were "normal" with "no convincing electrophysiologic evidence of radiculopathy . . . affecting the right upper extremity." Soon after, Williams informed Dr. Asfahani that she was discharging Pham from physical therapy because Pham had reached maximum improvement. In turn, Dr. Asfahani released Pham with no restrictions from a neurological standpoint on September 21, 2017.

[¶7.]     But Pham still had temporary restrictions from an orthopedic standpoint. Dr. Liddell diagnosed Pham with adhesive capsulitis and recommended physical therapy for her shoulder. Pham began another round of physical therapy with Williams in January 2018. After a month, however, Williams informed Smithfield's Health Services Manager that Pham would be discharged from physical therapy, noting that "[h]er pain remains relatively the same with or without intervention." She recommended a reevaluation from neurology and again stated "maximal level reached" as the reason for Pham's discharge from physical therapy. Pham last visited Dr. Liddell at CORE on April 5, 2018, and he also recommended that Pham follow up with Dr. Asfahani for a reevaluation at AMG Neurology.

[¶8.]     It was around this time that Smithfield suspended workers' compensation benefits. Following Dr. Liddell's recommendation, a claims agent messaged Dr. Asfahani inquiring as to whether he "need[ed] to see Ms. Pham to determine if she [was] still at [maximum medical improvement] for the [October 2015 cervical injury]." No response from Dr. Asfahani appears in the record. Further, in August 2018, Smithfield's Health Services Manager requested an independent medical examination (IME) from Dr. Ryan Noonan at AMG Occupational Medicine. Specifically, Smithfield requested Dr. Noonan's "opinion on Permanent Partial Impairment for the cervical condition and surgery[.]" In his August 30, 2018 IME report, Dr. Noonan concluded that Pham sustained an 8% permanent partial whole person impairment (PPD) as a result of the October 2015 work injury.

[¶9.]     Following the IME, Smithfield completed a memorandum of payment for PPD which Pham refused to sign. The PPD memorandum was received by the Department in November 2018 and reflected weekly PPD payments based on the 8% impairment rating totaling $14,804.62 in "[c]ompensation to be paid to the employee for permanent physical impairment pursuant to SDCL 62-4-6[.]" Smithfield sent a check to Pham for that amount on March 4, 2019, and the Department notified Pham that Smithfield "can begin making payments of partial disability benefits[.]"

[¶10.]     Pham continued to seek and receive medical treatment under her Smithfield-sponsored group health insurance throughout 2019 and 2020. Most

notably, on January 24, 2020, Pham underwent right elbow surgery—an ulnar nerve decompression—to address her elbow pain and the tingling in her fingers.

[¶11.]     Pham subsequently filed a petition for a hearing with the Department on July 17, 2020, seeking payment of medical benefits for the elbow surgery, unpaid past medical expenses, and ongoing medical treatment that she attributes to the October 2015 injury.  Originally, Pham also alleged that she was permanently and totally disabled, though the parties ultimately entered into a joint stipulation dismissing the permanent disability claim without prejudice and with a corresponding order that the Department would retain jurisdiction over the claim.  Pham's petition also related her course of care, but, significantly, it did not allege that Smithfield bears the burden to justify its decision to deny further benefits.[1]

[¶12.]     In its answer, Smithfield acknowledged it initially accepted Pham's claims as compensable, asserting it only paid workers' compensation benefits to which Pham was entitled.  But Smithfield denied that the work-related injury was a major contributing cause for the January 2020 surgery and generally denied responsibility for any additional benefits.

[¶13.]     At the hearing, Pham testified in person through an interpreter and stated that, prior to the injury, she had no issues with her neck, right shoulder, right elbow, migraines, or numbness and tingling in her right arm.  She also explained that none of the various treatments provided any permanent relief for the pain she experiences on the right side of her upper body.  And, as a result, she

---

1.     After filing, Pham underwent a third surgery in March 2021 to install a trial spinal cord stimulator.  The parties appear to agree that this, too, was at issue.

believed that she would continue to require extensive medical treatment into the future. On cross-examination, however, Pham testified that she last complained of her right-sided pain to Smithfield in 2019.

[¶14.] Pham submitted a video deposition of Dr. Thomas Ripperda as expert testimony on the causation issue. Dr. Ripperda is board-certified in physical medicine and rehabilitation and pain medicine. He served as one of Pham's treating physicians and saw her thirteen times from March 2016 to November 2021.

[¶15.] Dr. Ripperda attributed Pham's worsening conditions to the repetitive nature of her workplace activities and anticipated lifelong consequences—"that every five to seven years [Pham will] need . . . imaging to her cervical spine[.]" He opined that Pham's work-related activities were a major contributing cause to Pham's right shoulder issues (adhesive capsulitis and thoracic outlet syndrome), back and neck pain (radiculitis and radiculopathy), right elbow pain (ulnar nerve), and migraine headaches. Further, Dr. Ripperda agreed that Pham's treatment, physical therapy, injections, acupuncture, and surgeries were "all reasonable and necessary treatment as a result of the October 2015 work injury[.]"

[¶16.] On cross-examination, Dr. Ripperda acknowledged he was not aware of Pham's medical history prior to the injury, which included reports of migraine headaches and complaints of neck and shoulder pain. Dr. Ripperda also indicated he did not review Dr. Liddell's CORE records relating to Pham's shoulder treatment. As it relates to Pham's headaches, Dr. Ripperda maintained that the prior records would not change his opinion "if [Pham's] headaches were very well

controlled and she was not on any medications for migraines[.]" In his view, the headaches and subsequent migraine diagnoses resulted from Pham's neck pain.

[¶17.]    As its sole witness, Smithfield called Dr. Wade Jensen, who testified live via video link.  Dr. Jensen is a board-certified orthopedic surgeon at the Center for Neurosciences, Orthopedic and Spine in Dakota Dunes.  Smithfield hired him to conduct a medical records review of Pham's medical history, including her pre-injury complaints, in order to offer his medical opinion concerning causation.

[¶18.]    Dr. Jensen testified that he disagreed with Dr. Ripperda's opinions about Pham's neck and right arm pain, noting that Dr. Ripperda "was not aware of any records that she had previous neck pain or shoulder complaints[.]"  In Dr. Jensen's view, Pham had a "classic presentation of . . . a progressive degenerative problem in her neck, both on imaging and on history."  Consequently, Dr. Jensen opined that he did not believe Pham's employment was a major contributing cause to her neck condition and the need for further treatment.

[¶19.]    Regarding the ulnar nerve issue, Dr. Jensen identified the two ways ulnar nerve compressions could be identified: an EMG and neuromonitoring during cervical surgeries.  He first noted that all of Pham's EMGs came back normal and that Pham had "neuromonitoring during her [2017] cervical surgery and did not have any signs of neuropathy[.]"  From these observations, Dr. Jensen opined that the ulnar nerve issue did not exist at the time of the 2017 cervical surgery, nor was it caused by the surgery.  As a result, he did not believe Pham's employment was a major contributing cause to her ulnar nerve compression or any conditions associated with the ulnar nerve.

[¶20.]     Dr. Jensen also provided opinions on Pham's other diagnoses. Regarding her headaches, he disagreed with Dr. Ripperda's opinion that her headaches were "coming from her neck." Instead, he noted that Pham's chronic daily headaches began in 2011 and she was diagnosed with migraines in 2014. As it related to thoracic outlet syndrome and adhesive capsulitis, Dr. Jensen testified that the former is an uncommon diagnosis and that Pham's symptoms did not match those associated with thoracic outlet syndrome.

[¶21.]     For the latter, Dr. Jensen again noted the medical records predating the injury, emphasizing that Pham's shoulder complaints began in 2008 and "adhesive capsulitis is a very specific diagnosis[.]" He testified that the condition most commonly affects women aged 40-60 and 80% of the cases "are truly idiopathic, meaning they don't have a reason[.]" In Dr. Jensen's view, Pham's right shoulder adhesive capsulitis was idiopathic.

[¶22.]     In her post-hearing brief, Pham claimed for the first time that Smithfield failed to meet an asserted burden "of proving the medical treatment recommended by Pham's authorized and accepted treating physician, Dr. Thomas Ripperda, [was] unreasonable, unsuitable or improper." Pham argued that our decision in *Hanson v. Penrod Construction Co.*, 425 N.W.2d 396 (S.D. 1988), supported her burden allocation theory, relying upon a passage interpreting SDCL 62-4-1 and explaining that a treating physician is authorized to "determine what is necessary, or suitable and proper." 425 N.W.2d at 399.

[¶23.]     Accordingly, Pham viewed Dr. Ripperda's opinions as dispositive because he was "Pham's authorized and accepted treating physician[.]" And in his

video deposition, he opined that, to a reasonable degree of medical certainty, Pham's work conditions were a major contributing cause to her headaches, right-sided shoulder, neck, and elbow issues.

[¶24.]     In response, Smithfield oriented its post-hearing written argument to the issues it believed were actually in front of the Department, asserting that the predicate issue of causation was at issue, not the reasonableness or necessity of Pham's care.[2]  And because causation requires a medical opinion, the issue of causation and the corresponding entitlement to benefits then turned on the expert opinions.  In Smithfield's view, Dr. Jensen's opinion that Pham's employment was not a major contributing cause of her need for treatment was more persuasive than Dr. Ripperda's.

[¶25.]     The ALJ issued a decision in favor of Smithfield and entered findings of fact and conclusions of law in which it accepted Dr. Jensen's testimony over Dr. Ripperda's and determined that Pham "failed to meet her burden of proving that her work-related injury is a major contributing condition pursuant to SDCL 62-1-1(7)."  In an apparent reference to Pham's post-hearing burden-shifting argument, the ALJ also noted that "Pham has attempted to raise other issues and arguments in her brief but as they were not included in the Prehearing Order[,]" they would not be addressed.

[¶26.]     Pham appealed the decision to the circuit court, again asserting that Smithfield bore the burden of proving the treatment was "unreasonable, unsuitable, or improper."  Pham further developed her argument that Dr. Ripperda's testimony

---

2.     The parties agreed at a pre-hearing conference that causation was at issue.

was more persuasive by citing our previous decision in *Peterson v. Evangelical Lutheran Good Samaritan Society*, 2012 S.D. 52, 816 N.W.2d 843, for the proposition that "[t]he opinion of an examining physician should be given substantial weight when compared to the opinion of a doctor who only conducts a review of medical records." 2012 S.D. 52, ¶ 23, 816 N.W.2d at 850.

[¶27.]     The circuit court issued a memorandum decision and order reversing the Department. The court, for the first time in the litigation, cited SDCL 62-7-33 and concluded that once an employee proves a compensable injury, workers' compensation payments can only "be ended, diminished, increased, or awarded" by either party if, after review, "the department finds that a change in the condition of the employee warrants such action." SDCL 62-7-33. "Because Smithfield had already accepted Pham's injury as compensable," the court reasoned, "the only way for it to terminate coverage for related treatment was by requesting a review from the Department, pursuant to SDCL § 62-7-33." As a result, the court determined the ALJ "improperly shifted the burden to Pham[,]" an error which, "in and of itself would require reversal[.]"

[¶28.]     Alternatively, the circuit court concluded that the Department's assessment of the expert testimony was clearly erroneous. The court determined that Dr. Ripperda's opinion "was not given appropriate weight[.]" Moreover, the court emphasized the timing of Dr. Jensen's review, referring to his opinion as a "post-denial paper review[.]" In its order, the court "reverse[d] and remand[ed] for an award in favor of Pham under her petition with regard to compensability[.]"

[¶29.]     Smithfield now appeals, raising two issues, which we restate as follows:

>    1.     Whether the circuit court erred when it concluded that SDCL 62-7-33 required Smithfield to demonstrate that Pham was not entitled to benefits.
>
>    2.     Whether the ALJ clearly erred when it accepted Dr. Jensen's expert testimony.

## Analysis and Decision

### *SDCL 62-7-33 and burden-shifting*

[¶30.]     The circuit court held sua sponte that the present circumstances are governed by SDCL 62-7-33, which provides, in relevant part:

> Any payment . . . *made or to be made* under this title *may be reviewed* by the Department of Labor and Regulation . . . and on such review payments may be ended, diminished, increased, or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action.

(Emphasis added.)

[¶31.]     On its face, SDCL 62-7-33 does not apply here.  *See Betty Jean Strom Tr. v. SCS Carbon Transp., LLC*, 2024 S.D. 48, ¶ 45, 11 N.W.3d 71, 88 ("The starting point when interpreting a statute must always be the language itself." (cleaned up)); *Puffy's, LLC v. Dep't of Health*, 2025 S.D. 10, ¶ 41, 18 N.W.3d 134, 146 ("[W]e must apply 'the cardinal rule of statutory interpretation—simply read the text and apply it.'" (citation omitted)).  The statute authorizes a review of "[a]ny payment" that an employer is otherwise obligated to make.  Here, neither Pham nor Smithfield is seeking a review of anything; Pham is seeking to establish a right to receive workers' compensation payments that does not otherwise exist.  And the

circuit court's contrary view that Smithfield is obligated to continue paying benefits solely by virtue of its previous voluntary payments is not supported by SDCL 62-7-33.[3]

[¶32.]     The text of the statute reveals a legislative intent to provide predictability for injured workers by regulating the means by which employers can change an *existing* obligation to pay workers' compensation benefits. Indeed, SDCL 62-7-33 describes the obligation to make payments in settled, established terms— "All payments . . . made or to be made[.]" And the right of review authorized by the statute is conditioned upon a "change in the condition of the employee"—a change, in other words, since the obligation to make payments arose.

[¶33.]     For these reasons, we have previously referred to SDCL 62-7-33 as the "statutory procedure . . . for modifying a *final* Department order[.]" *Johnson v. United Parcel Serv., Inc.*, 2020 S.D. 39, ¶ 40, 946 N.W.2d 1, 12 (emphasis added). A brief review of our cases applying SDCL 62-7-33 shows that, in each, the Department had approved an employee's claim that an injury was compensable—

---

3.     As Smithfield points out, the circuit court's interpretation of SDCL 62-7-33 is not only unsupported by its text, it is also inconsistent with other statutes including SDCL 62-7-35.1, which provides:

> In any case in which any benefits have been tendered pursuant to this title on account of an injury, any claim for additional compensation shall be barred, unless the claimant files a written petition for hearing pursuant to § 62-7-12 with the department within three years *from the date of the last payment of benefits.* The provisions of this section do not apply to review and revision of payments or other benefits under § 62-7-33.

(Emphasis added.) The emphasized text of the statute contemplates voluntary payments by an employer without creating ongoing liability or shifting the burden of proof to establish compensability.

most often in the context of a prior final Department order or an agreement approved by the Department. *See e.g.*, *Johnson*, 2020 S.D. 39, ¶ 7, 946 N.W.2d at 4–5 (2006 Department Order); *Whitney v. AGSCO Dakota*, 453 N.W.2d 847, 849 (S.D. 1990) (stipulation for lump sum payment approved by the Department); *Kasuske v. Farwell, Ozmun, Kirk & Co.*, 2006 S.D. 14, ¶ 4, 710 N.W.2d 451, 453 (settlement agreement approved by Department); *Sopko v. C & R Transfer Co.*, 1998 S.D. 8, ¶ 4, 575 N.W.2d 225, 227 (stipulation for settlement formally approved by the Department); *see also Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶¶ 27–30, 853 N.W.2d 878, 885–86 (Department's earlier order dismissing employee's petition but recognizing the employer admitted causation).

[¶34.] Here, Smithfield did not have an obligation to make payments; its pre-petition workers' compensation payments were made voluntarily. The parties had never previously litigated causation under SDCL 62-1-1(7); Pham had not petitioned for a hearing; and there was no settlement agreement approved by the Department or other final order obligating Smithfield to pay ongoing benefits. In SDCL 62-7-33 terms, there is nothing for the Department to review. And, unlike the employer in *Hayes*, Smithfield contested causation in its answer to Pham's petition and successfully litigated the question before the ALJ. As a result, we conclude that SDCL 62-7-33 is inapplicable to the present circumstances.

[¶35.] Prior to the circuit court's decision to rely upon SDCL 62-7-33, Pham had never alleged the statute applied or that she was seeking a review of an obligation to make workers' compensation payments based upon changed circumstances. Instead, Pham argued—after the ALJ hearing—that Smithfield had

the burden to show that her treatment was "unreasonable, unsuitable, or improper." That standard, however, does not govern workers' compensation causation, and neither the ALJ nor the circuit court addressed it. As indicated above, Pham's formulation of this standard seems to be a reference to an excerpt from *Hanson v. Penrod Construction Co.*, 425 N.W.2d at 399. *See supra* ¶ 22. But Pham's reliance on *Hanson* to support her burden-shifting argument is misplaced.

[¶36.]     Read in context, the portion of *Hanson* at issue relates solely to paying medical bills deemed necessary by the treating physician pursuant to SDCL 62-4-1, which provides, generally, that an employer must furnish necessary medical care. The provisions of SDCL 62-4-1 presume a compensable injury; they do not provide a means for establishing compensability, which is instead determined by the standards set out in SDCL 62-1-1(7). This latter statute focuses on whether the employment is or remains a major contributing cause of an employee's need for treatment—not the propriety or reasonableness of care, or a change in condition. Here, the parties both agreed that compensability was an unresolved issue, as evidenced in the ALJ's pre-hearing order listing it as an issue for the hearing.

[¶37.]     Consequently, Pham overstates the significance of the following passage from *Hanson*:

> Once notice has been provided and a physician selected . . . the employer has no authority to approve or disapprove the treatment rendered, it is the doctor's province to determine what is necessary or suitable and proper. When a disagreement arises as to treatment rendered, or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.

425 N.W.2d at 399. We note further, in this regard, that SDCL 62-4-1 must be read in conjunction with SDCL 62-4-1.1, which specifically allows the employer to deny payment "on the basis that the injury is not compensable[.]"

[¶38.] Under the circumstances, we conclude that Pham's repeated *Hanson*/SDCL 62-4-1 burden-shifting argument, like SDCL 62-7-33, does not apply here. That is to say, Smithfield did not have the burden to prove non-compensability at the administrative hearing. Accepting Pham's argument would create an unsound rule under which employers would be discouraged from making prompt, voluntary payments to employees for fear that they would be foreclosed from disputing compensability later. *See Salisbury v. Illinois Workers' Comp. Comm'n*, 78 N.E.3d 979, 982 (Ill. App. Ct. 2017) ("Encouraging employers to make prompt and voluntary payments of benefits furthers the purpose of the [Workers' Compensation] Act."); *see also Rogers v. Jack's Supper Club*, 935 N.W.2d 754, 762 (Neb. 2019) ("Voluntary payments of workers' compensation benefits do not constitute an admission of liability by the employer.").

[¶39.] Accordingly, because the issue of compensability has not been litigated or adjudicated, Pham bears the burden to establish compensability, as the ALJ correctly noted in the pre-hearing order.

**Expert medical testimony, causation and the clear error standard**

[¶40.] "We review the Department's decision in the same manner as the circuit court." *News Am. Mktg. v. Schoon*, 2022 S.D. 79, ¶ 18, 984 N.W.2d 127, 133 (citation omitted); *see* SDCL 1-26-36; SDCL 1-26-37. "We review the Department's findings of fact for clear error and overturn them only if 'after reviewing the

evidence we are left with a definite and firm conviction that a mistake has been made.'" *Schoon*, 2022 S.D. 79, ¶ 18, 984 N.W.2d at 133 (quoting *Hughes v. Dakota Mill & Grain, Inc.*, 2021 S.D. 31, ¶ 12, 959 N.W.2d 903, 907). Here, the parties agree that we review the ALJ's factual findings for clear error. By contrast, "[t]he Department's conclusions of law are fully reviewable." *Id.* ¶ 18, 984 N.W.2d at 133–34 (quoting *Hughes*, 2021 S.D. 31, ¶ 12, 959 N.W.2d at 907).

[¶41.]　　　"In a workers' compensation dispute, a claimant must prove all elements necessary to qualify for compensation by a preponderance of the evidence." *Arneson v. GR Mgmt., LLC*, 2024 S.D. 61, ¶ 16, 13 N.W.3d 206, 213 (quoting *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 11, 777 N.W.2d 363, 367). An injury is compensable only if it "aris[es] out of and in the course of the employment[.]" SDCL 62-1-1(7). But "[s]ustaining a work-related injury does not automatically establish entitlement to benefits for the claimed condition; instead, the claimant must prove that the work-related injury is a major contributing cause of his claimed condition and need for treatment." *Arneson*, 2024 S.D. 61, ¶ 16, 13 N.W.3d at 213.

[¶42.]　　　"Causation must be established to a reasonable degree of medical probability, not just possibility." *Id.* ¶ 17. Speculative evidence is insufficient; it must instead be "precise and well supported." *Darling*, 2010 S.D. 4, ¶ 12, 777 N.W.2d at 367. "The testimony of medical professionals is crucial in establishing the causal relationship between the work-related injury and the current claimed condition 'because the field is one in which laypersons ordinarily are unqualified to

express an opinion.'" *Arneson*, 2024 S.D. 61, ¶ 17, 13 N.W.3d at 213 (quoting *Darling*, 2010 S.D. 4, ¶ 13, 777 N.W.2d at 367).

[¶43.]     Here, acting in a traditional fact-finding role, the ALJ found that the testimony of Smithfield's expert, Dr. Jensen, was more persuasive than that of Dr. Ripperda, Pham's expert. Under our clear error standard, this fact-bound determination should be afforded great deference and "overturn[ed] . . . only if 'after reviewing the evidence we are left with a definite and firm conviction that a mistake has been made.'" *Schoon*, 2022 S.D. 79, ¶ 18, 984 N.W.2d at 133 (quoting *Hughes*, 2021 S.D. 31, ¶ 12, 959 N.W.2d at 907). In our view, the ALJ's findings were not clearly erroneous, and the circuit court's alternative clear error determination strayed from this established standard.

[¶44.]     The circuit court "f[ou]nd that the ALJ erred in placing more reliance on the opinion of Dr. Jensen rather than that of Dr. Ripperda." But as a reviewing court, "we are unable to reweigh the evidence[;]" instead, our role is limited to "review[ing] the [Department's] findings for clear error." *Uhre Realty Corp. v. Tronnes*, 2024 S.D. 10, ¶ 27, 3 N.W.3d 427, 435.

[¶45.]     Both the circuit court and Pham rely upon a portion of our *Peterson* opinion which states, "The opinion of an examining physician should be given substantial weight when compared to the opinion of a doctor who only conducts a review of medical records." *Peterson*, 2012 S.D. 52, ¶ 23, 816 N.W.2d at 850. But this statement from *Peterson* should not be viewed as altering the deference underlying our clear error standard, which recognizes the institutional advantage of a fact finder to hear and see the witnesses and weigh the relative merits of their

testimony. *See Gordon v. St. Mary's Healthcare Ctr.*, 2000 S.D. 130, ¶ 35, 617 N.W.2d 151, 160 ("[T]his Court has 'long held that the [Department] is in the best position to assess the credibility of the witnesses and the weight to be accorded their testimony, and we give due regard to its opportunity to observe the witnesses and the evidence first hand.'" (citation omitted)). Nor did *Peterson*'s use of the phrase "substantial weight" establish a per se hierarchy among medical experts that obligates a fact finder to accept a treating physician's testimony over another non-treating expert. Rather, *Peterson* simply allows the fact finder to consider any advantage a treating physician may have over another expert among the myriad of other factors used to determine credibility and weight.

[¶46.] Here, the ALJ was keenly aware that Dr. Ripperda's opinions were formed in connection with his treatment of Pham but, nevertheless, relied upon our settled rule that "[e]xpert testimony is entitled to no more weight than the facts upon which it is predicated." *Darling*, 2010 S.D. 4, ¶ 13, 777 N.W.2d at 367. And it was Dr. Jensen's knowledge of the entirety of Pham's records that the ALJ found particularly persuasive. Specifically, in finding "Dr. Jensen's opinion more persuasive[,]" the ALJ noted that "Dr. Ripperda was unaware of Pham's medical records prior to [the] injury regarding treatment for her shoulder or for headaches. Dr. Jensen, however, reviewed all of Pham's medical records." In addition, the ALJ acknowledged that "[b]oth doctors are experts in their fields, but without knowing Pham's history of treatment in these relevant areas," it found "Dr. Ripperda's opinion is not well-supported."

[¶47.] The standard of review is dispositive here, and both parties' efforts to undertake lengthy expositions of the voluminous medical records seem to suggest that we will weigh the strength of the two doctors' causation opinions. But this is contrary to our role as a reviewing court in a case like this, where the medical evidence was presented by testimony and not simply by documentary evidence. The ALJ's findings are supported by the record, and we are not "left with a definite and firm conviction that a mistake has been made." *Schoon*, 2022 S.D. 79, ¶ 12, 984 N.W.2d at 133 (quoting *Hughes*, 2021 S.D. 31, ¶ 12, 959 N.W.2d at 907).

[¶48.] For these reasons, we reverse the circuit court and reinstate the ALJ's decision.

[¶49.] JENSEN, Chief Justice, and DEVANEY, and MYREN, Justices, and KNOFF, Circuit Court Judge, concur.

[¶50.] KNOFF, Circuit Court Judge, sitting for KERN, Justice, who deemed herself disqualified and did not participate.